A10A2082. In the Interest of C. B., a child.

(706 SE2d 752)

BLACKWELL, Judge.

Following an evidentiary hearing, the juvenile court determined that C. B., a minor child, is deprived. The father of the child appeals, contending that the juvenile court erred at the evidentiary hearing by admitting hearsay evidence and by taking judicial notice of prior proceedings and orders concerning the same child without, the father says, giving him sufficient notice of its intent to do so. The father also claims that insufficient evidence was adduced at the hearing to sustain the finding of deprivation. The record on appeal, however, does not reveal any reversible error, and for this reason, we affirm.

1. We turn first to the contention that the juvenile court erred at the hearing by admitting hearsay evidence. The father made several objections at the hearing, including some on hearsay grounds, and many of these objections were sustained by the juvenile court. Although a few objections were overruled, the father does not specify the overruling of any particular objection as error. Instead, the father complains on appeal that the juvenile court allowed a caseworker employed with the Cherokee County Department of Family and Children Services (DFACS) to testify about facts of which her knowledge was based exclusively, the father claims, upon her review of records contained in a DFACS case file. But the father made no timely objection to this testimony below, and because he did not, he failed to preserve any error in admitting the testimony for our review. See *In the Interest of A. K.*, 272 Ga. App. 429, 435 (1) (b) (612 SE2d 581) (2005); *In the Interest of H. D. M.*, 241 Ga. App. 805, 808 (2) (527 SE2d 633) (2000). For this reason, the contention that the juvenile court erred at the hearing by admitting hearsay evidence affords no basis for us to reverse the decision below.

The father says that, even if he failed to preserve the admission of hearsay evidence for review on appeal by a timely objection below, hearsay has no probative value, and we, therefore, cannot consider it when we assess whether the evidence is sufficient to sustain a finding of deprivation. That may be true enough, see *In the Interest of J. C.*, 242 Ga. 737, 740 (3) (251 SE2d 299) (1978), but it does not help the father here. From our review of the record, whether most of the testimony about which the father complains is, in fact, hearsay is uncertain.[1] It may be true, as the father claims, that the caseworker

---

[1] As with most generalizations, there is an exception. The caseworker was asked to identify a printout from the website of the State Board of Pardons and Paroles, and she testified that it was a printout "stating that" the mother of C. B. maintains her residence at a particular address. To the extent that this testimony was offered merely to identify the

knew about certain facts to which she testified only because she read about them in a case file. But the father did not object to this testimony, did not voir dire the caseworker about the basis of her knowledge of these facts, and did not later cross-examine the caseworker about the basis of her knowledge. For all we know, the caseworker had personal and direct knowledge of these facts. When a witness testifies without objection about a specific fact, we will not deem it hearsay and without probative value unless it appears clearly from the record that the witness's knowledge of this fact is based exclusively upon what she was told or what she read.[2] See *In the Interest of C. M.*, 258 Ga. App. 387, 388 (2) (574 SE2d 433) (2002) ("We will not presume the trial court committed error where that fact does not affirmatively appear in the record.").

2. We turn next to the contention that the juvenile court improperly took judicial notice of prior proceedings and orders concerning C. B. The father says that the juvenile court could not properly take judicial notice of these prior proceedings and orders because it did not afford him notice of its intent to do so and an opportunity to object. But the written order from which this appeal was taken clearly makes reference to the prior proceedings and orders, and this order reflects that the father consented to its form several days before the judge signed it.[3] Accordingly, the father had notice that the proposed written order made reference to the prior proceedings and orders, but the father apparently did nothing to object to these references or bring the issue of judicial notice to the attention of the juvenile court before the order was entered, although he had several days in which to do so. As such, the father was afforded adequate notice of the possibility that the juvenile court

---

printout – which the juvenile court later refused after objection to admit as an exhibit – or merely to explain the conduct of DFACS personnel, it was admissible for that limited purpose. But to the extent that DFACS relies upon this testimony as proof that the mother, in fact, maintained her residence at that address, it is hearsay because it clearly was based not on the personal knowledge of the witness, but instead upon what appeared on the face of the printout from which she was testifying. We will not consider this testimony in our review of the sufficiency of the evidence.

[2] The father contends that the caseworker could not possibly have knowledge of things that happened before she became employed with DFACS. Even if that were true, the record does not reflect when the caseworker became employed with DFACS, so it would not help the father here. And the father contends that the caseworker could not possibly have knowledge of things that happened in other counties, but for all we know, the caseworker visited the other counties and saw first-hand the things about which she testified. We will not engage in speculation about what the caseworker saw with her own eyes and what she did not.

[3] The order appears to have been signed by another on behalf of, and by the authority of, the father's lawyer, indicating the consent of the father to the form of the order. A party is presumed to know the contents of a writing that he signs or that he authorizes another to sign on his behalf. See *Northwest Plaza, LLC (MI) v. Northeast Enterprises*, 305 Ga. App. 182, 190 (1) (699 SE2d 410) (2010).

might take judicial notice of the prior proceedings and orders, and he waived any objection to the taking of judicial notice.[4] See *In the Interest of S. Y.*, 264 Ga. App. 623, 625 (2) (591 SE2d 489) (2003); *In the Interest of M. N. H.*, 237 Ga. App. 471, 474 (2) (517 SE2d 344) (1999), overruled in part on other grounds, *State v. Herendeen*, 279 Ga. 323 (613 SE2d 647) (2005). For these reasons, the taking of judicial notice of prior proceedings and orders concerning C. B. affords no basis for us to reverse the decision of the juvenile court.

3. We turn finally to the contention that the evidence adduced at the evidentiary hearing is insufficient to sustain the finding of deprivation. Proof of deprivation must be clear and convincing, and on appeal, we ask whether any reasonable trier of fact could have found such proof of deprivation, viewing the evidence in the light most favorable to the findings of the juvenile court below. See *In the Interest of R. M.*, 276 Ga. App. 707, 707 (624 SE2d 182) (2005). According to our statutes, a child is deprived if he is "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." OCGA § 15-11-2 (8) (A). A finding of deprivation also requires proof that the circumstances amounting to deprivation "resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child." *R. M.*, 276 Ga. App. at 715 (citation and punctuation omitted). In this case, the juvenile court found that the mother presented a danger to C. B. and that the father deprived C. B. by failing to protect him from his mother. We think the evidence is sufficient to sustain these findings.

Viewed in the light most favorable to the disposition below, the evidence is sufficient to sustain the determination that the mother presented a danger to C. B. as of the date of the deprivation hearing. In its order, the juvenile court noted that the evidence in prior proceedings established — and the father had stipulated in these prior proceedings — that the mother had chronic substance abuse

---

[4] As a general matter, juvenile courts in deprivation proceedings properly may take judicial notice of such prior proceedings and orders, see *In the Interest of J. A.*, 298 Ga. App. 11, 14 (1) (679 SE2d 52) (2009), and the father gives us no reason to believe that any objection to taking judicial notice in this case would have had merit. And although the father claims that he should have been afforded the opportunity to present evidence in response to the prior proceedings and orders of which notice was taken, he does not identify any specific evidence that he would have brought forward. For these reasons too, the father cannot show that the taking of judicial notice is reversible error. See *In the Interest of D. W.*, 294 Ga. App. 89, 94 (3) (a) (668 SE2d 533) (2008) ("An appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful.") (citation and punctuation omitted).

problems.[5] Moreover, the evidence presented at the hearing established that the mother had an extensive history of criminal activity, which had continued for more than a decade, that four of her seven children had been exposed to controlled substances, and that her parental rights to four children had been terminated. There was testimony at the hearing that the issues about the mother's substance abuse and criminal activity still were unresolved at the time of the hearing. Moreover, testimony at the hearing established that the mother had anger management issues, which manifested when the mother was overheard by the caseworker screaming obscenities at another in a threatening manner for several minutes. Finally, there was testimony that the father, only a little more than a month before the hearing, admitted that he understood "the danger and threat" that the mother posed to her children.[6]

We think the evidence also is sufficient to sustain the finding that the father was permitting the mother to have contact with C. B., despite the danger that she presented to the child. In December 2009, the juvenile court had awarded the father custody of C. B., subject to the condition that the father keep C. B. from his mother. The father understood this condition and acknowledged it. Notwithstanding the order that C. B. be kept from his mother, a manager of the mobile home park in which the father lives testified at the hearing that, soon after the mother was released from jail in January 2010, he saw C. B. in the care of the mother at the father's mobile home. Another manager of the same park testified that, on the date of the hearing, the mother was present at the park and that she had seen the mother with the children at the home of the father on several occasions. Finally, the father testified at the hearing, in which he denied that he had spoken with the mother since C. B. was born, denied that the mother had been at his home in the presence of C. B., and denied that the mother had been at his home at all since C. B. was born, except on one occasion after C. B. was removed from his home. Given the conflicts in the testimony, the juvenile court was entitled to conclude, as it did, that the father was dishonest in his

---

[5] The father did not include transcripts of the earlier proceedings or copies of the orders entered in those earlier proceedings in the record on appeal. Because he did not, we must presume that the evidence in those earlier proceedings, and the findings in the earlier orders, show precisely what the juvenile court said they show. See *Code v. State*, 255 Ga. App. 432, 433 (2) (565 SE2d 477) (2002) ("Absent a transcript, we must assume the ruling of the trial court is supported by the evidence.") (citation and punctuation omitted); *In the Interest of B. B. S.*, 253 Ga. App. 119, 120 (3) (558 SE2d 447) (2001) ("The burden is on the appellant to show . . . error affirmatively by the record.").

[6] The father made this admission at the time of a probable cause hearing, which occurred on March 5, 2010, according to the order of the juvenile court. The hearing on the deprivation petition occurred on April 22, 2010.

testimony, and the court further was authorized to infer from his dishonesty that, in fact, the father had permitted C. B. to have contact with his mother and that the father put the interests of the mother ahead of the best interest of C. B. See *Ferguson v. State*, 307 Ga. App. 232, 234 (1) (704 SE2d 470) (2010).

We have said before that "a parent's failure to protect a child from harm is sufficient to authorize a finding that the child is deprived on account of a lack of proper parental care or control." *In the Interest of L. A. T.*, 291 Ga. App. 312, 315 (661 SE2d 679) (2008). Accordingly, we have held in several cases that evidence of exposure to a dangerous person sustains a finding of deprivation. See, e.g., id. (mother's continuing cohabitation with boyfriend, despite allegations that he had sexually abused child, supported finding of deprivation); *In the Interest of A. S.*, 285 Ga. App. 563, 567 (646 SE2d 756) (2007) (mother allowing child to have contact with her ex-boyfriend, which violated terms of child safety plan, authorized finding of deprivation); *R. M.*, 276 Ga. App. at 715 (failure of parents to comply with tuberculosis treatment plan, which resulted in exposure of children to disease, authorized finding of deprivation). And in our view, a finding of deprivation is even more sustainable when the parent is dishonest with the juvenile court about having exposed the child to a dangerous person. See *In the Interest of D. H.*, 243 Ga. App. 778, 784 (534 SE2d 466) (2000) (termination of parental rights authorized where, "[g]iven the chance to show the court that she could put her children first, [the mother] nonetheless continued to live with [her husband]," who posed a danger to the children, "and attempted to mislead the court" about it). We conclude that the evidence is sufficient to sustain the determination that C. B. is deprived by his father.

*Judgment affirmed. Barnes, P. J., and Dillard, J., concur.*

DECIDED MARCH 2, 2011.

*Ali-Reza P. Ghanouni*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General, Thompson, Meier & King, Dana M. Thompson, Jessica M. Chapman*, for appellee.