**SECOND DIVISION**
**MILLER, P. J.,**
**ANDREWS and BROWN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 8, 2018**

# In the Court of Appeals of Georgia

A18A0257. IN THE INTEREST OF H. B. et al., CHILDREN.

BROWN, Judge.

The parents of minor children Hai. B., L. B., and Han. B. appeal from the juvenile court's order finding the children to be dependent and placing them in the temporary custody of the Paulding County Department of Family and Children Services ("DFCS" or the "Department"). On appeal, the parents challenge the sufficiency of the evidence to establish that the children are dependent and several related juvenile court rulings. For the reasons that follow, we affirm.

On appeal from an adjudication of dependency, "we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence" that the children are dependent. *In the Interest of E. G. M.*, 341 Ga. App. 33, 34 (1) (798 SE2d

639) (2017). "[W]e neither weigh the evidence nor judge the credibility of the witnesses, but instead defer to the factual findings made by the juvenile court, bearing in mind that the juvenile court's primary responsibility is to consider and protect the welfare of a child whose well-being is threatened." (Citation and punctuation omitted.) Id.

So viewed, the record shows that Hai. B. was born in July 2004, L. B. was born in October 2005, and Han. B. was born in April 2013; all are female. On May 9, 2017, DFCS received a report that the father had been taking showers with his two youngest daughters and had been forcing them to perform oral sex on him. At the request of DFCS, the juvenile court issued a Dependency Removal Order on May 12, 2017, and scheduled a preliminary protective hearing for May 15, 2017. On May 22, 2017, DFCS filed a petition seeking to have the children adjudicated dependent based on the above-referenced allegations, as well as additional allegations of past physical and sexual misconduct by the parents. An adjudicatory and dispositional hearing was conducted on May 30 and June 16, 2017. The children remained in DFCS custody during this time.

On June 23, 2017, the juvenile court entered the Order of Adjudication and Disposition that is primarily at issue in this appeal. In its order, the court identified

two grounds for its dependency rulings. First, the court concluded that the children are dependent due to "the issue of sexual touching while the father was taking showers with [L. B. and Han. B.]" and the mother's "fail[ure] to protect the children." Second, the court found the children to be dependent due to the parents' "failure to get treatment for the children" with respect to the parents' "long standing and chronic history of domestic violence," which, the court found, "has had a negative effect on the children." Consequently, the court ordered the children to remain in DFCS custody and directed DFCS to prepare a case plan to reunify the family. This appeal followed.

1. The parents contend that the evidence was insufficient to establish their children's present dependency. The State counters that the parents cannot meet their burden of showing error, primarily because they designated the hearing transcript to be excluded from the record on appeal. We agree with the State that, on the current record, the parents have not met their burden of establishing reversible error.

"Under the most recent version of Georgia's Juvenile Code, the juvenile court may place a minor child in the protective custody of the Department where the State

3

shows, by clear and convincing evidence, that the child is a 'dependent child.'"[1] (Citations and footnote omitted.) *In the Interest of S. C. S.*, 336 Ga. App. 236, 244 (784 SE2d 83) (2016). The Juvenile Code defines "dependent child," in relevant part, as a child who "[h]as been abused or neglected and is in need of the protection of the court." OCGA § 15-11-2 (22) (A). "Neglect," in turn, is defined as "[t]he failure to provide proper parental care or control, subsistence, education as required by law, or other care or control necessary for a child's physical, mental, or emotional health or morals." OCGA § 15-11-2 (48) (A).

Factors to be considered in determining whether a child is without proper parental care or control include "[e]gregious conduct or evidence of past egregious conduct of a physically, emotionally, or sexually cruel or abusive nature by [a] parent toward his or her child or toward another child of such parent." OCGA § 15-11-311 (a) (4). Consideration of past misconduct is appropriate because "the juvenile court

[1] Before 2014, the Juvenile Code authorized a juvenile court to award DFCS custody of any minor child shown to be "deprived," rather than "dependent." *In the Interest of S. C. S.*, 336 Ga. App. 236, 244, n. 4 (784 SE2d 83) (2016). "Given the similarities between the definition of a 'deprived child' and that of a 'dependent child,' . . . our previous decisions addressing the deprivation of a child are relevant to appeals involving the dependency of a child." Id.; compare OCGA § 15-11-2 (8) (2013) (defining "deprived child" under the prior Juvenile Code), with OCGA § 15-11-2 (22) & (48) (2017) (defining "dependent child" and "neglect" under the current Juvenile Code).

is not required to reunite a child with a parent in order to obtain current evidence of deprivation or neglect." (Citation and punctuation omitted.) *In the Interest of E. G. M.*, 341 Ga. App. at 54 (4). Nevertheless, the record must contain evidence of present dependency, not merely past or potential future dependency. See *In the Interest of G. R. B.*, 330 Ga. App. 693, 700 (769 SE2d 119) (2015); *In the Interest of T. H.*, 319 Ga. App. 216, 219 (735 SE2d 287) (2012).

Moreover, a finding of parental unfitness is essential to support an adjudication of present dependency. See *In the Interest of E. N. R.*, 323 Ga. App. 815, 816 (748 SE2d 293) (2013); *In the Interest of C. D. E.*, 248 Ga. App. 756, 761 (1) (546 SE2d 837) (2001). "[U]nfitness" in this respect refers to "intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child." (Punctuation and footnote omitted.) *In the Interest of G. R. B.*, 330 Ga. App. at 700-701; accord *In the Interest of C. D. E.*, 248 Ga. App. at 761 (1). Parental unfitness, like dependency, also must be proved by clear and convincing evidence. See *In the Interest of S. J.*, 270 Ga. App. 598, 599 (607 SE2d 225) (2004).

"Appellants have the burden of showing error affirmatively by the record." *Famble v. State Farm Ins. Co.*, 204 Ga. App. 332, 336 (4) (419 SE2d 143) (1992).

5

Where the appellants elect not to provide this Court with a transcript of the relevant hearing, and the transcript is necessary to review the claimed error, we will assume that the evidence is sufficient and affirm. Id.; see also *Blue v. Blue*, 279 Ga. 550, 550 (1) (615 SE2d 540) (2005) ("[I]n the absence of a transcript of the evidence, we must presume that the evidence supports the judge's findings."); *Maree v. Phillips*, 274 Ga. 369, 370 (2) (552 SE2d 837) (2001) (absent a transcript, an appellate court will presume that the trial court discharged its duty in compliance with the law); *In the Interest of M. S. S.*, 308 Ga. App. 614, 619 (1) (b) (708 SE2d 570) (2011) (in the absence of transcript, we presume juvenile court's order justified).

Given the absence of a hearing transcript, the following facts are taken primarily from the juvenile court's Order of Adjudication and Disposition. During the dependency hearing, the court heard testimony from K. M. (a 10-year-old classmate of L. B.) and K. M.'s mother. Both witnesses testified that K. M. "told her mother that [L. B.] came to school recently and told that [sic] she showered with her father and that her little sister[, Han. B.,] sucked her father's private parts." The juvenile court explicitly found K. M.'s "testimony credible"; in light of its ultimate ruling, we presume that the court similarly credited K. M.'s mother's testimony. And given the absence of a transcript, we accept the juvenile court's finding that the parents waived

6

any objection to the admissibility of this hearsay testimony.[2] See *Maree*, 274 Ga. at 370 (2).

A detective whom the juvenile court qualified as an expert in conducting forensic interviews testified that he had interviewed L. B. and Han. B. several weeks before the hearing. According to the detective, "each child immediately offered up, using adult language, that there has been no sexual abuse and then told him about the shower schedule for each person in the home." The youngest child, Han. B. "also offered up that she could not tell the police man [sic] if something ever happened to her because they will take her sisters away." (Punctuation omitted.) The detective testified that neither child made a disclosure and that it was clear that each had been coached about what to say.

The juvenile court implicitly credited the detective's testimony, finding that the children had been coached by their parents. The court also explicitly discredited the parents' denials that they had spoken with the children before the interviews and

---

[2] Before the current Evidence Code became effective in 2013, see Ga. L. 2011, pp. 99, 214, § 101, hearsay had no probative value, even if no contemporaneous objection was raised to its admission. See *In the Interest of A. T.*, 309 Ga. App. 822, 826 (1) (711 SE2d 382) (2011). Under the current Evidence Code, however, "if a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible." OCGA § 24-8-802.

found that the parents' interference had prevented L. B. and Han. B. from corroborating the reports made by K. M. and her mother.

T. L., the mother's half-sister, testified regarding a family visit to her home in late 2009, when L. B. was four years old. Shortly after the family arrived, T. L. heard the parents "arguing about [the father] wanting to shower with [L. B.]" Later that afternoon, T. L. saw L. B. lying across her father's lap as her father "rubb[ed] her across her buttocks over her panties." At some point during the visit, as the women and girls were about to go out, L. B.'s father indicated that L. B. was going to stay home with him. L. B.'s mother, however, refused to let her stay with her father. T. L. testified that she "shared her concerns about the things that she had heard and saw with the mother," who denied that "there was anything going on." The juvenile court found T. L.'s testimony credible and noted that, "although it is several years old, it is consistent with the reoccurring allegations that have been made" against the father and "support[s] a finding that the issue of showering with his girls was not a fiction."

Dr. James E. Stark testified on behalf of the parents as an expert in abuse and neglect, forensic psychology, custody and visitation, allegations of abuse, and anger management. After conducting a psychosexual evaluation of the father based upon the father's "self-referral," Dr. Stark reported, in relevant part, as follows: (i) the

8

father appeared to be trying to show himself in the best light; (ii) results indicated that he "responded in an overtly defensive manner" while resisting admissions of personal shortcomings, which resulted in a profile of "questionable validity due to his defensiveness"; (iii) although he reported high anxiety, testing revealed only "minimal anxiety symptoms"; and (iv) scores on sexual interest tests showed "no overt signs of deviant or problematic behaviors." Based on Dr. Stark's report and testimony, the juvenile court (i) found that the father "feigns" anxiety, and (ii) implicitly discounted Dr. Stark's finding of a low propensity for child abuse based on his additional observation that the father provided only limited documents for him to review and the court's finding that "the testing [was] based on [the father's] attempt to show that he is not sexually attract[ed] to children."

The juvenile court also recounted several past sexual misconduct allegations, apparently to address the parents' assertions that prior court orders were "res judicata" as to those allegations. See Division 2, infra. In 2010, allegations were made that the father was showering with his two now-adult daughters – who were approximately ages eleven and thirteen at the time – "and that he tried to put his 'thing' in their mouths." Due to these allegations, the two older daughters were placed in foster care for a period of time. Although one of the older daughters

testified at the dependency hearing that these allegations were false, the juvenile court implicitly discredited this testimony, which the court described as "disturbing" in light of the father's claim that he did not have a relationship with his adult daughters. The court also found that the adult daughter who testified had not been in the parents' home in over four years, had never met the youngest child, Han. B., and had not spoken to her father for several years before being asked to testify.

Additional allegations were made in 2012 after the father initiated divorce proceedings. In her answer and counterclaim to the 2012 divorce petition, the mother alleged that the father had been showering with his daughters and improperly touching L. B., who would have been six years old at the time. Approximately six months later, proceedings involving DFCS in Cherokee County resulted in a court order directing Hai. B. and L. B. to be placed in shelter care on the ground that L. B. had alleged sexual abuse by her father. The juvenile court in that case ultimately found, based on the parents' stipulation, that the children were deprived[3] due to "inappropriate verbal discipline" and required the family to participate in various types of counseling. The court also entered a six-month protective order requiring the

---

[3] The 2012 Cherokee County case arose under the old Juvenile Code. See note 1, supra.

mother to ensure that there was no unsupervised contact between the children and the father and prohibiting the mother from allowing the father to stay in the home overnight absent DFCS permission.

In 2013, allegations were made that the father was rubbing baby oil on L. B.'s genitals. At the time, L. B. would have been seven years old. In 2014, a referral was made after one or more persons reported that L. B., who would have been eight or nine years old at the time, was "habitually touching her genitals in class." The juvenile court noted that the parents had provided no documents regarding the outcome of these allegations, notwithstanding their attorney's assertion that the issue had been "resolved by prior court order." Consequently, the court stated that it was "unaware of the outcome" of the 2013 and 2014 allegations and that it presumed that no court order existed determining "whether or not [these instances] of sexual abuse occurred."

Absent a transcript, there is no basis in the record to call into question the juvenile court's findings that followed from the testimony presented at the dependency hearing. See *Blue*, 279 Ga. at 550. The court was entitled to credit the testimony of K. M. and her mother, the detective, and T. L., and to determine that the children are dependent due to sexual touching during showers with their father.

11

Adequate evidence also exists to establish that the mother failed to protect her children from the misconduct. See *In the Interest of C. A. J.*, 331 Ga. App. 788, 791 (1) (771 SE2d 457) (2015) (affirming a deprivation determination on grounds that, inter alia, the mother knowingly had failed to protect her child from sexual abuse by her husband); *In the Interest of S. B.*, 312 Ga. App. 180, 183-184 (1) (718 SE2d 49) (2011) (affirming a deprivation determination as to all four of the parents' children on grounds that the father had molested two of them and the mother had done nothing to stop the abuse despite knowing of it). We therefore affirm the juvenile court's ruling that the children currently are dependent.

2. The parents also contend that the juvenile court improperly took judicial notice of certain filings made in this case and in prior court proceedings. In making the findings discussed above, the juvenile court explicitly considered allegations made in filings in a 2010 superior court case, a 2011 juvenile court case, a 2012 divorce case, and a 2012 juvenile court case. The parents' claim that the court improperly took judicial notice of these filings is flatly refuted by the dependency order, in which the court explicitly stated that each of these filings was tendered into evidence in the current case without objection.

12

To the extent that the parents claim that the juvenile court improperly considered allegations not included in any of the above filings, absent a transcript, we presume that the testimony presented at the dependency hearing supported any such findings. See *Blue*, 279 Ga. at 550 (1); *Maree*, 274 Ga. at 370 (2); *In the Interest of M. S. S.*, 308 Ga. App. at 619 (1) (b). Notwithstanding the parents' suggestion to the contrary, the juvenile court did not treat any of the prior allegations as if they had been proven. Instead, it summarized the extended history of recurring allegations, which the father confirmed had been made against him. The court then rejected the parents' claim that the prior proceedings were "res judicata" based upon its conclusion that "there has never been a court order that states [that the father] did or did not shower[] with" or "commit sexual acts with his female children." (Emphasis omitted.) A review of the juvenile court's order as a whole shows that its finding of dependency rested upon L. B.'s statements at school and "*testimony* that supported the likelihood that the events occurred and the eye witness *testimony* provided" at the hearing. (Emphasis supplied.) It did not rest upon allegations in documents admitted without objection to support the parents' res judicata arguments. We discern no error in this regard.

3. The parents also contend that the juvenile court misrepresented various facts in its Order of Adjudication and Disposition. We address each alleged discrepancy in turn.

(a) The parents maintain that the juvenile court misrepresented the number of prior misconduct allegations. In particular, the parents challenge the court's statement that prior sexual abuse allegations had been made against the father "beginning when his now 19 and 20 year old daughters were younger, and again in 2010, 2012, and 2013 as to the three children that are before this Court." We agree that, (a) standing alone, this statement suggests that allegations involving the father's now-adult children predated 2010 and that allegations against Hai. B., L. B., and Han. B. were made in 2010, and (b) both propositions conflict with the court's specific findings as to prior allegations. Nevertheless, when viewed in context with the entire dependency order, it is apparent that, in its analysis of each prior allegation, the juvenile court properly considered each allegation only once. Consequently, this isolated discrepancy does not rise to the level of reversible error.[4] See *In the Interest of C. B.*, 308 Ga. App. 158, 159 (2), n. 4 (706 SE2d 752) (2011) (appellant must show harm

---

[4] The parents have identified no record evidence supporting their passing, conclusory suggestion that the juvenile court "was obviously aware" that two sets of 2012 allegations arose out of the same circumstances.

14

as well as error to prevail on appeal; to be reversible, error must be harmful). Similarly, the parents' claim that the juvenile court mischaracterized as "sexual abuse" a 2014 report that L. B. had been touching herself in class likewise provides no basis for reversal, as the court did not rely upon this particular evidence to support its finding of dependency. Its decision rather rested on L. B.'s statements at school and the hearing testimony "that supported the likelihood that the events occurred." The court took great pains throughout its order to note that no court orders had resolved the prior sexual abuse allegations. See id.

(b) The parents assert, without elaboration, that the juvenile court mischaracterized T. L.'s testimony about the family's 2009 visit to her home as "an eye witness account of [the father's] intent to shower with [L. B.]" Given T. L.'s testimony, as described above, this was a permissible inference on the part of the juvenile court.

(c) The parents contend that the juvenile court mischaracterized K. M.'s testimony as describing L. B.'s "outcry" – which, the parents claim, means a "loud cry or vehement protest" – because L. B. and Han. B. "denied [K. M.]'s statement in multiple forensic interviews." As used in the context of this case, however, the term "outcry" denotes a report made by a child identifying potential sexual or physical

misconduct. See, e.g., *In the Interest of C. A. J.*, 331 Ga. App. at 789-791 (1); *In the Interest of S. B.*, 312 Ga. App. at 181-182; *In the Interest of R. J. M.*, 295 Ga. App. 886, 887, 890 (1) (673 SE2d 527) (2009). L. B.'s subsequent, contradictory statements have no bearing on the court's characterization of her earlier statement as an outcry. We discern no error in this regard.

(d) The parents maintain that the juvenile court misrepresented the detective's testimony that he believed the children had been coached before their forensic interviews when the court found that, but for the parents' interference, L. B. and Han. B. "would have been able to tell the truth about what is actually going on in [their] home." In light of the totality of the evidence discussed above, this also was a permissible inference by the court.

(e) The parents assert that the juvenile court misrepresented the record by implying that the father previously had been found guilty of assault. In the dependency order, the court stated, in relevant part, "In 2011, the father was arrested for making terroristic threats against the mother and that [sic] he assaulted her. (The father was found not guilty on the terroristic threats case [sic].)" Absent a transcript, we presume that the evidence supports the court's findings in this regard. See *Blue*,

16

279 Ga. at 550 (1); *Maree*, 274 Ga. at 370 (2); *In the Interest of M. S. S.*, 308 Ga. App. at 619 (1) (b).

4. The parents further contend that the juvenile court abused its discretion by admitting T. L.'s "irrelevant" testimony. Given the similarities between T. L.'s account and the current allegations, however, it was well within the court's discretion to admit her testimony. See *In the Interest of A. R.*, 296 Ga. App. 62, 63 (2) (a) (673 SE2d 586) (2009) (we review a trial court's decision to admit or exclude evidence for abuse of discretion). Although the parents highlight that T. L. described events that preceded the current allegations by several years, this challenge implicates the weight of the evidence, rather than its admissibility. See *Jones v. Chatham County Bd. of Tax Assessors*, 270 Ga. App. 483, 486 (3) & n. 8 (606 SE2d 673) (2004); *In the Interest of D. S. R.*, 246 Ga. App. 426, 427 (2) (541 SE2d 61) (2000). The challenged testimony is relevant to show that the current allegations are consistent with an ongoing pattern of circumstances supporting the juvenile court's ultimate conclusion that the children's welfare currently is at risk.

5. The parents contend that their children were denied the right to legal counsel during the May 15, 2017 preliminary protective hearing and that a conflict of interest required their children's appointed attorney to seek to be removed as their guardian

ad litem. See OCGA §§ 15-11-103 (a)-(c); 15-11-104 (b), (h). The State responds that the parents lack standing to raise these claims on behalf of their children.

(a) As to the alleged denial of counsel during the May 15 hearing, we agree with the State. Pretermitting whether the children's attorney was acting as such during the May 15 hearing, we presume that, given her May 15 appointment, she represented the children during the dependency hearing, and nothing in the record suggests that she has since been relieved of that representation. See OCGA § 15-11-103 (e) ("An attorney appointed to represent a child in a dependency proceeding shall continue the representation in any subsequent appeals unless excused by the court."). Because the children remain represented, standing to raise any claims on their behalf rests with the children, and not with the parents.[5] See *In the Interest of W. L. H.*, 292 Ga. 521, 524 (739 SE2d 322) (2013) ("[W]hen a court appoints a guardian ad litem to represent a minor, the minor is in effect made a party to the action and has standing through the guardian ad litem to appeal.") (citation, punctuation, and emphasis omitted); accord *In the Interest of R. L.*, 321 Ga. App. 837, 838-839 (1) (743 SE2d 502) (2013); *In the Interest of J. C. W.*, 318 Ga. App. 772, 779-780 (1) (734 SE2d 781) (2012).

---

[5] The children have not filed any briefs in this appeal.

(b) Even if we assume, without deciding, that the parents have standing to assert a claim that the children's attorney labored under a conflict of interest, the absence of a transcript of the dependency hearing precludes us from determining whether any conflict significantly affected the attorney's performance. Cf. *State v. Abernathy*, 289 Ga. 603, 604-605 (1) (715 SE2d 48) (2011) (defendant asserting ineffective assistance of counsel must demonstrate that conflict of interest "significantly affected counsel's performance") (citations and punctuation omitted). The parents' reliance on a July 2017 guardian ad litem report is misplaced, as that report post-dated the dependency ruling and thus has no bearing on the ruling at issue in this appeal.

6. The parents also challenge the juvenile court's initial Dependency Removal Order ("DRO"), which was issued on the same day the complaint was presented in this case. The DRO recounted the current allegations, as well as several of the prior allegations discussed above, and ordered DFCS to take temporary custody of the children on the ground that remaining at home would be contrary to their welfare. According to the parents, the children's removal was unwarranted at this stage of the proceedings because the father had moved out of the house by then.

19

The State's claim that the parents' failure to designate a hearing transcript for inclusion in the record on appeal precludes review of this contention is misplaced, as the record contains no indication that a hearing was held before the DRO's issuance. See OCGA § 15-11-132 (a) ("The facts supporting the issuance of an order of removal may be relayed orally, including telephonically, . . . and the order directing that a child be taken into custody may be issued orally or electronically."). As to the merits of the parents' claim, however, they have pointed to nothing in the record indicating that it was brought to the juvenile court's attention before the DRO's issuance that the father had moved out of the house. Consequently, the parents cannot show error by the court in failing to take that factor into consideration. See *In the Interest of S. M.*, 333 Ga. App. 326, 329 (1) (775 SE2d 782) (2015) ("The burden is on him who asserts error to show it affirmatively by the record . . . .") (punctuation and footnote omitted); *Capital Land USA, Inc. v. Mitsubishi Motors Credit of America, Inc.*, 308 Ga. App. 71, 73-74 (3) (706 SE2d 590) (2011) (this Court will not consider arguments raised for the first time on appeal).

7. Relying upon OCGA § 15-11-134 (c), the parents contend that the DRO is "void ab initio" because it does not include individualized findings as to each child's dependency or as to misconduct by the mother. According to the parents, the absence

20

of such findings deprived the juvenile court of jurisdiction to order the children's removal in the DRO. We discern no error.

"As a general rule, a juvenile court is a court of special and limited jurisdiction, and a juvenile court's judgment must show on its face such facts as are necessary to give the court jurisdiction of the person and subject matter. If the order of a juvenile court fails to recite the jurisdictional facts, the judgment is void." (Citation and punctuation omitted.) *In the Interest of B. H.-W.*, 332 Ga. App. 269, 270 (1) (772 SE2d 66) (2015).

> Jurisdiction of the subject-matter does not mean simply jurisdiction of the particular case then occupying the attention of the court, but jurisdiction of the *class of cases* to which that particular case belongs. As applied to the subject-matter of a suit, jurisdiction is always conferred by law. . . . [I]f the pleadings state a case belonging to a *general class* over which the authority of the court extends, then jurisdiction attaches and the court has power to hear and determine the issues involved.

(Citation and punctuation omitted; emphasis in original.) *Nicholson v. State*, 261 Ga. 197, 199 (4) (403 SE2d 42) (1991). A juvenile court thus has the power to hear and determine the issues involved in a case in which present dependency of a child is alleged. See *Lewis v. Winzenreid*, 263 Ga. 459, 460-461 (435 SE2d 602) (1993).

21

The complaint in this case alleged, in relevant part, that: (i) a report had been made that the father had been taking showers with his youngest two daughters and forcing them to perform oral sex on him; (ii) there is a history of sexual assault allegations having been made against the father; (iii) the family also has a history of domestic violence; (iv) the parents had demonstrated an inability to provide for the children in a safe and stable manner; and (v) the children "are without proper parental care or control as required by law and necessary for their physical, mental[,] and emotional health." These allegations were sufficient to identify this case as one in which the present dependency of the children is at issue. See *Lewis*, 263 Ga. at 460-461; see also OCGA §§ 15-11-2 (22) (A), (48) (A); 15-11-311 (a) (4).

The DRO identified each of the children by name and date of birth and recited the same factual allegations that were included in the complaint, as identified above. Although it would have been better for the body of the DRO to have explicitly stated that the children were alleged to be "dependent," the factual allegations in the DRO were at least minimally sufficient to show that this case concerns whether the children presently are "in need of the protection of the court" due to "abuse[] or neglect[]." See OCGA § 15-11-2 (22) (A). When viewed in conjunction with the caption of the order, which identifies it as a "Dependency Removal Order," these factual allegations

22

sufficiently show that this case belongs to a class of cases over which the juvenile court has subject matter jurisdiction.[6] See OCGA § 15-11-10 (1) (C); *In the Interest of B. H.-W.*, 332 Ga. App. at 270-271 (1) (a juvenile court's custody order showed on its face the necessary jurisdictional facts by, in relevant part, identifying the child and the general subject matter of the proceedings); *In the Interest of M. L. C.*, 249 Ga. App. 435, 436 (1) (548 SE2d 137) (2001) (the juvenile court's deprivation order sufficiently recited the necessary jurisdictional facts by "reflect[ing] on its face that it was addressing the alleged deprivation of M. L. C."); compare *In re Tidwell*, 279 Ga. App. 734, 738-739 (1) (a) (632 SE2d 690) (2006) (a juvenile court order containing no indication that the deprivation of a child with regard to her custodial parent had yet been placed in issue was void insofar as it purported to rule on that issue).

The parents have not cited, and we are not aware of, any authority supporting their contention that more particularized findings as to each child or parent were required in the DRO to establish the juvenile court's *jurisdiction* over this general

---

[6] To the extent that the parents claim that the DRO failed to establish *personal* jurisdiction, "this is an issue that can be waived, and because the [parents have] not shown that [they] raised the matter below, we deem it waived on appeal." *In the Interest of M. L. C.*, 249 Ga. App. 435, 436 (548 SE2d 137) (2001).

23

class of case. To the contrary, OCGA § 15-11-134 (c), on which the parents primarily rely, governs the findings required to justify *removal*. It imposes no requirements related to a court's *jurisdiction* to address the issue in the first instance. See *Lewis*, 263 Ga. at 460-461. Consequently, we find no merit in the parents' claim that the DRO is void on its face.

8. Finally, the parents contend that the juvenile court erred by failing to conduct a dispositional hearing. This contention is flatly contradicted several times in the record.

First, following the preliminary protective hearing, the juvenile court ordered an "Adjudication and Disposition hearing" to be held two weeks later. In the order, the court also barred the father from visiting his children "pending the Adjudication and Disposition hearing." The hearing notice issued by DFCS and served on the parents' counsel similarly designated the hearing as an "Adjudicatory and Dispositional Hearing." When the parties failed to complete the hearing in one day, the court entered an "Order Continuing Adjudication and Disposition Hearing," in which it scheduled a "second day of a specially set Adjudication and Disposition Hearing" two weeks after the first day of the hearing. Finally, in its Order of

24

Adjudication and Disposition, the court observed that "[t]he Adjudication and Dispositional trial" lasted two days.

To the extent that the parents claim that a dispositional hearing separate from the adjudicatory hearing was required, any such claim is refuted by OCGA § 15-11-210 (a), which explicitly contemplates a dispositional hearing "held in conjunction with an adjudication hearing." Consequently, this enumeration of error is meritless.

9. Given our conclusion that the juvenile court did not err when it found the children dependent based on issues related to sexual misconduct, we do not address the parents' challenge to the additional finding of dependency premised on domestic violence. See *In the Interest of N. H.*, 297 Ga. App. 344, 345 (1), n. 1 (677 SE2d 399) (2009). For each of the above reasons, we affirm the judgment of the juvenile court.

*Judgment affirmed. Miller, P. J., and Andrews, J., concur.*