**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**January 23, 2024**

# In the Court of Appeals of Georgia

A23A1311. IN THE INTEREST OF K. M., et al., CHILDREN (MOTHER).

DILLARD, Presiding Judge.

Angelia Ferguson appeals the juvenile court's temporary order adjudicating her six minor children dependent. Specifically, Ferguson argues—and the State agrees—the trial court erred in finding that there was clear and convincing evidence the children were dependent due to the parents' marijuana use, alleged abuse, and neglect. For the following reasons, we reverse.

Viewed in the light most favorable to the juvenile court's judgment,[1] the record shows that this case concerns Ferguson's six living children—K. M. (1 year old); W. B. (2 years old); R. B. (3 years old); F. B. (5 years old); T. B. (10 years old); and N. F.

---

[1] *See, e.g.*, *In the Interest of K. R.*, 367 Ga. App. 668, 668 (888 SE2d 204) (2023).

(11 years old). During the relevant time period, Ferguson was in a relationship with Terry Moore for two-and-a-half years, and they lived together with the children.[2] On August 20, 2022, Georgia's Division of Family and Children Services ("DFCS") became involved with Ferguson's family after J. M.— her and Moore's two-month-old child—was found dead in their home.[3] Moore testified that he awoke around 2:00 or 3:00 a.m. because he heard J. M. crying, so he got up and fed him a bottle. Moore then placed J. M. in his "bouncer" chair, turned on a movie, and went back to sleep. At that point, J. M. was asleep and unsupervised. According to Moore, he placed the baby in the bouncer because he normally fell asleep and was comfortable in it; but Moore acknowledged that doing so was "a bad decision." Later, when Moore awoke the next morning, he found J. M. unresponsive and called the police. Despite Ferguson's attempts to perform CPR, J. M. did not survive.

During the investigation that ensued, the DFCS investigator discovered that there had been two prior incidents of the agency being involved with the family. Specifically, before they moved to Georgia, one child was burned when an iron fell on

---

[2] Although the trial court found the children dependent as to Moore, he is not a party to this appeal.

[3] K. M. and J. M. are Moore's only biological children with Ferguson.

her foot, and Ferguson immediately took her to the hospital. The children were not removed from the home due to this incident, and the case was ultimately closed. Additionally, in July 2022 (prior to his death), DFCS received a report that J. M. had a "grapefruit-sized bruise" on his abdomen. And when Ferguson was questioned about the injury, she claimed that her one year old, K. M., fell while walking near him and her head caused the bruise. Ferguson immediately took J. M. to the hospital after the accident occurred; and later, she had a pediatrician evaluate the injury. According to the DFCS investigator, there was no evidence the bruise was the result of "foul play," and she agreed that "accidents happen with children every day." Eventually, the case was closed and merged with the instant case.

When questioned by a DFCS investigator, Ferguson admitted to smoking marijuana and testing positive for its use.[4] Nevertheless, according to the investigator, (1) Ferguson's home was "very clean"; (2) there was adequate food with "[n]ecessities in the fridge and pantries"; and (3) the children had adequate bedding and clothes in their drawers. Additionally, the investigation revealed that Ferguson chose not to physically discipline the children, but instead, she "would just take

_____

[4] While Ferguson tested positive for marijuana on August 22, 2022, she was not tested again before the November 15, 2022 hearing.

things" away. The investigator did not believe Ferguson or Moore were "hiding anything or not being forthcoming with the information [she] requested from them." Indeed, Ferguson was compliant with the DFCS investigator from the time she took on the case.

Ferguson's DFCS case manager testified that her cooperation had been "great," and that Ferguson completed a parenting assessment and attended substance-abuse counseling as soon as she was told to do so. When asked what DFCS's position was regarding the dependency of the children and need for care, the case manager stated only that they needed counseling.

An officer who responded to the scene testified that after J. M. died, he was sent to the Georgia Bureau of Investigation ("GBI") for an autopsy. The autopsy did not reveal anything physical as causing the child's death (such as a fractured skull or broken bones). And J. M. did not have bleeding in the brain or a retinal hemorrhage, which are indicative of a shaken baby. As a result, the cause of death was categorized as "undetermined." So, at the time of the dependency hearing, the police department did not plan on arresting either Ferguson or Moore in connection with J. M.'s death. The responding officer also testified that, based on her investigation, she had no

concerns about the safety or supervision of Ferguson's other children. Lastly, when searching Ferguson's home, the officer found a single "small little square bagg[y]" of marijuana.

Turning to the instant proceedings, on August 22, 2022, two days after J. M.'s death, DFCS removed Ferguson's remaining six children from her home, and the next day, DFCS filed a dependency petition as to each child. According to DFCS, its reasons for filing the petition were J. M.'s death and the two prior incidents requiring its involvement. But without providing specifics, DFCS summarily stated that "[d]ue to the information obtained and the ongoing investigation, the agency is asking for the children to be found dependent for their own safety."

Following a hearing on the matter at which the foregoing evidence was presented, the juvenile court granted the dependency petition and ordered the children be placed in DFCS custody temporarily pending receipt of a relative search report within 30 days of when they were first removed from the home. The court also ordered Ferguson and Moore be granted supervised visitation with the children at DFCS's discretion. As for the reasons for its decision, the court found the children had been abused or neglected by Ferguson and were in need of protection. The court

also noted that the children's parents have been subject to three investigations into unexplained injuries to the children, including the death of an infant. Additionally, the court found it needed further "assessment of the parents' parenting capacity and drug use." This appeal by Ferguson follows.

Ferguson's sole argument is that the juvenile court erred in concluding that clear and convincing evidence showed that her children were dependent due to their parents' marijuana use and alleged abuse and neglect. We agree, and significantly, so does the State.

When analyzing an appeal from an order finding a child dependent, we review the juvenile court's finding of dependency "in the light most favorable to the lower court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child is dependent."[5] And in making this

---

[5] *In the Interest of La. K. et al.*, 353 Ga. App. 855, 857 (840 SE2d 76) (2020) (punctuation omitted); *accord In the Interest of R. D.*, 346 Ga. App. 257, 259 (1) (816 SE2d 132) (2018). The Juvenile Code was "substantially revised in 2013." *In the Interest of M. F.*, 298 Ga. 138, 140 (1) n.4 (780 SE2d 291) (2015). And the former Juvenile Code "authorized a juvenile court to award custody to the Department of any minor child shown to be 'deprived.'" *In the Interest of S. C. S.*, 336 Ga. App. 236, 244 n.4 (784 SE2d 83) (2016). But the current Juvenile Code, which applies in this case, "uses the word 'dependent' in lieu of 'deprived.'" *Id.*; *see* OCGA § 15-11-16 (a) (3) (providing that a proceeding under the new Juvenile Code "may be commenced . . . [b]y the filing of a complaint or a petition as provided in Article[ ] 3 ... of [the current

determination, we do not weigh the evidence or judge the credibility of witnesses but instead "defer to the factual findings made by the juvenile court, bearing in mind that it must consider and protect the welfare of a child whose well-being is threatened,"[6] while also keeping in mind "its solemn obligation under both the federal and Georgia constitutions to—whenever possible—preserve the parent and child's fundamental right to familial relations."[7] Lastly, the party bringing the petition alleging dependency

---

Juvenile Code]," which governs dependency proceedings). Nevertheless, given the similarities between the definition of a "deprived child" and that of a "dependent child," we have found that "our previous decisions addressing the deprivation of a child are relevant to appeals involving the dependency of a child." *In the Interest of S. C. S.*, 336 Ga. App. at 244 n.4.

[6] *In the interest of La. K. et al*, 353 Ga. App. at 857-58 (punctuation omitted); *accord In the Interest of T. Y.*, 350 Ga. App. 553, 558 (829 SE2d 808) (2019).

[7] *In the Interest of K. R.*, 367 Ga. App. at 670; *see In the Interest of La. K. et al*, 353 Ga. App. at 861 ("Notably, even a temporary loss of custody is not authorized unless there is clear and convincing evidence that the dependency resulted from unfitness on the part of the parent that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child. Thus, only under compelling circumstances that are found to exist by such clear and convincing proof may a court sever, even temporarily, the parent-child custodial relationship. This is because the right to the custody and control of one's child is a fiercely guarded right in our society and in our law. Indeed, as our Supreme Court recently emphasized, the right of familial relations is among the inherent rights that are derived from the law of nature.") (cleaned up)).

"carries the burden of proof, not the parent from whose custody the child will be removed."[8]

Importantly, even a temporary loss of custody is not authorized unless there is clear and convincing evidence that the dependency resulted from unfitness on the part of the parent that is "either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child."[9] As a result, only under "compelling circumstances that are found to exist by such clear and convincing proof may a court sever, even temporarily, the parent-child custodial relationship."[10] This is, of course, because the fundamental right to the custody and control of one's child is "a fiercely guarded right in our society and in our law."[11] And as our Supreme Court recently emphasized, the right of familial relations is "among the inherent rights that are derived from the law

---

[8] *In the Interest of La. K. et al*, 353 Ga. App. at 862; *accord In the Interest of T. Y.*, 350 Ga. App. at 559.

[9] *In the Interest of La. K. et al*, 353 Ga. App. at 861 (punctuation omitted); *accord In the Interest of A. J. H.*, 325 Ga. App. 848, 852 (755 SE2d 241) (2014).

[10] *In the Interest of La. K. et al*, 353 Ga. App. at 861; *In the Interest of H. S.*, 285 Ga. App. 839, 841 (648 SE2d 143) (2007).

[11] *In the Interest of La. K. et al*, 353 Ga. App. at 861 (punctuation omitted); *accord In the Interest of H. S.*, 285 Ga. App. at 843-44.

of nature."[12] The record must contain, then, "evidence of present dependency, not merely past or potential future dependency."[13] With this guiding analytical framework in mind, we turn to Ferguson's specific claim of error.

In this case, Ferguson claims the juvenile court's dependency ruling was not supported by clear and convincing evidence that her children were subject to abuse or neglect. The State agrees with Ferguson, and so do we.

Under OCGA § 15-11-2 (22), a "dependent child" is defined, in relevant part, as a child who "[h]as been abused or neglected and is in need of the protection of the court . . . ." And suffice it to say, "parental unfitness" is essential to supporting an "adjudication of dependency."[14] So, in making its determination as to dependency, a juvenile court "may consider evidence of past conduct, but the record must contain

---

[12] *Patten v. Ardis*, 304 Ga. 140, 141 (2) (816 SE2d 633) (2018); *accord In the Interest of La. K. et al*, 353 Ga. App. at 861.

[13] *Interest of La. K. et al*, 353 Ga. App. at 861-62; *see In the Interest of A. J. H.*, 325 Ga. App. at 852 (noting, in a deprivation case, that for a child to be found deprived, "the record must contain evidence of "present deprivation, not past or potential future deprivation").

[14] *In the Interest of V. G.*, 352 Ga. App. 404, 406 (1) (834 SE2d 901) (2019) (punctuation omitted); *accord In the Interest of H. B.*, 346 Ga. App. 163, 165 (1) (816 SE2d 313) (2018).

evidence of *present* dependency, not merely past or potential future dependency."[15]

And as with dependency determinations, "[p]roof of parental unfitness must . . . be by clear and convincing evidence."[16] Importantly, this constitutionally mandated standard of review "safeguards the high value society places on the integrity of the family unit"[17]—*i.e.*, the private realm of family life[18]—and "helps eliminate the risk

---

[15] *In the Interest of A. M. B.*, 361 Ga. App. 551, 555 (a) (864 SE2d 713) (2021) (emphasis supplied); *see In the Interest of T. Y.*, 350 Ga. App. at 560 (1) ("[C]onsideration of past misconduct is appropriate because the juvenile court is not required to reunite a child with a parent in order to obtain current evidence of deprivation or neglect. But the record must contain evidence of present dependency, not merely past or potential future dependency." (punctuation & footnote omitted)).

[16] *In the Interest of V. G.*, 352 Ga. App. at 407 (1) (punctuation omitted); *see In the Interest of H. B.*, 346 Ga. App. at 165 (1) ("Parental unfitness, like dependency, also must be proved by clear and convincing evidence.").

[17] *In the Interest of K. R.*, 367 Ga. App. at 673 (2).

[18] *See Prince v. Massachusetts*, 321 U.S. 158, 166 (64 SCt 438, 88 LEd 645) (1944) (noting that there is a "private realm of family life which the state cannot enter"); *Dept. of Human Servs. v. Duncan*, 351 Ga. App. 332, 339 n. 1 (831 SE2d 4) (2019) (Dillard, P.J., concurring fully and specially) (noting that "[t]he family has rightly been characterized as the first and vital cell of society" (citation and punctuation omitted)); *see also* Richard W. Garnett, *Taking Pierce Seriously: The Family, Religious Education, and Harm to Children*, 76 NOTRE DAME LAW REV. 109, 114 (I) (2000).

that a factfinder might base his determination on a few isolated instances of unusual conduct or idiosyncratic behavior."[19]

In this regard, under OCGA § 15-11-2 (2) (A), "abuse" means, in relevant part, "[a]ny nonaccidental physical injury or physical injury which is inconsistent with the explanation given for it suffered by a child as the result of the acts or omissions of a person responsible for the care of a child . . . ." And OCGA § 15-11-2 (48) defines neglect as "[t]he failure to provide proper parental care or control, subsistence, education as required by law, or other care or control necessary for a child's physical, mental, or emotional health or morals; . . . [t]he failure to provide a child with adequate supervision necessary for such child's well-being; or . . . [t]he abandonment of a child by his or her parent, guardian, or legal custodian."[20]

Here, the juvenile court based its dependency ruling solely on (1) Ferguson and Moore's marijuana use, which they admitted; (2) a prior incident in which a child "pulled an iron down on top of itself resulting in a minor injury;" (3) a large bruise

---

[19] *In the Interest of V. G.*, 352 Ga. App. at 407 (1) (punctuation omitted); *accord In the Interest of C. D. E.*, 248 Ga. App. 756, 761 (1) (546 SE2d 837) (2001).

[20] OCGA § 15-11-2 (A)-(C).

being found on J. M.'s stomach shortly before he died; and (4) J. M.'s unexplained death.

As to the drug use, there was no evidence it was excessive or had any adverse impact on the children.[21] And although Ferguson failed a drug test in late August, there was no evidence of *present* drug use because she was not tested again before the November 15 dependency hearing nearly three months later.[22] Furthermore, a DFCS

---

[21] *See In the Interest of A. J. I.*, 277 Ga. App. 226, 230 (626 SE2d 195) (2006) (holding the State failed to prove by clear and convincing evidence that the children were deprived when, *inter alia*, there was no evidence that the mother was a chronic abuser of alcohol or drugs, and there was no evidence that her drug use had any adverse impact on the children); *In the Interest of M. L. C.*, 249 Ga. App. 435, 437-39 (2) (548 SE2d 137) (holding evidence was insufficient to support finding of deprivation when, *inter alia*, even though parents admitted to substance abuse and there was little evidence indicating how the drug use affected the child); *cf. In the Interest of S. O. C.*, 332 Ga. App. 738, 744 (1) (774 SE2d 785) (2015) (holding there was clear and convincing evidence of deprivation when, *inter alia*, over the course of two years, the mother failed multiple drug tests, missed numerous drug screenings, and had used drugs most of her life).

[22] *See In the Interest of M. S.*, 352 Ga. App. 249, 260, 262 (834 SE2d 343) (2019) (holding trial court erred in finding child dependent when, *inter alia*, the mother's *present* drug use was not established by clear and convincing evidence); *In the Interest of A. W.*, 340 Ga. App. 406, 412 (1) (a) (797 SE2d 655) (2017) (holding the State failed to meet its burden of showing child was dependent when, *inter alia*, evidence established that the mother had ceased using methamphetamine, she intended to continue her disuse, she had taken all the steps asked of her by [DFCS] in order to show that she no longer used the substance, and there was no evidence of long-term drug use); *cf. In the Interest of A. B.*, 274 Ga. App. 230, 231-32 (617 SE2d 189) (2005)

case worker testified that Ferguson attended substance-abuse counseling *as soon as she was asked to do so.*[23] As a result, Ferguson's marijuana use does not support the juvenile court's dependency ruling.[24]

Next, the trial court relied on two isolated incidents in which J. M. and another child were injured. But after both incidents, Ferguson immediately took the injured children to the hospital for treatment, and when a large bruise was discovered on J. M., she also had him evaluated by a pediatrician. Significantly, the DFCS investigator testified that there was no evidence J. M's bruise was the result of "foul play," and she agreed that "accidents happen with children every day." Moreover, the juvenile court found the other injury was the result of the *child* pulling an iron down on herself,

---

(holding, in the context of termination, that clear and convincing evidence existed that the cause of the children's deprivation was likely to continue when, *inter alia*, it was "highly likely" the mother would continue to using illegal drugs, the mother had abused cocaine for 20 years, she had a high risk of relapse, she had been incarcerated for drug offenses, and she tested positive for cocaine six times in a two-year period).

[23] *See In the Interest of G. R. B.*, 330 Ga. App. 693, 701-02 (769 SE2d 119) (2015) (reversing a juvenile court's ruling that child was deprived when, *inter alia*, "evidence established that [the parent] had passed several drug screens since the [deprivation] hearing, [he] indicated a willingness to undergo random drug tests, [he]testified to having a strong desire to stay sober for the sake of his child, and [he] was one-and-a-half months into completing a nine-month substance-abuse program).

[24] *See supra* notes 21-23 & accompanying text.

not that either parent intentionally used the iron to inflict what it described as a "minor injury." Simply put, there was no evidence Ferguson inflicted either of these injuries on her children, and a DFCS case worker described her response to each incident as being entirely appropriate. There was, then, no evidence that these two injuries were the result of abuse or neglect.

Lastly, the juvenile court relied on J. M.'s death as a basis for finding the other children dependent. But the autopsy revealed no physical injuries that could have caused J. M.'s death, there were no internal signs that he had been shaken, and the cause of death was categorized as undetermined. Furthermore, law enforcement did not arrest Ferguson or Moore in connection with J. M.'s death, and the responding officer testified that, based on her investigation, she had *no concerns* about the safety or supervision of the other children. Indeed, the officer did not believe the children were in any danger living with Ferguson and Moore. And although DFCS filed the dependency petition, the case manager testified that the agency's sole position regarding the dependency of the children and need for care was that the parents needed counseling. Simply put, there was no testimony suggesting the children should be removed from Ferguson's home due to safety concerns.

Given the foregoing, even viewing the evidence in the light most favorable to the juvenile court's ruling, there was no evidence—much less clear and convincing evidence—that the children were dependent due to abuse or neglect, and the court erred in finding otherwise.[25]

For all these reasons, the juvenile court abused its discretion in finding Ferguson's children dependent.[26]

*Judgment reversed. Rickman and Pipkin, JJ., concur.*

---

[25] *See Interest of La. K. et al*, 353 Ga. App. at 861-62 (holding that "even viewing the juvenile court's order in the light most favorable to its judgment, DFCS failed to demonstrate present harm to the children by [the parent], and thus clear and convincing evidence of dependency was not established when the court conducted the hearing, notwithstanding whatever may have occurred after the order issued"); *In the Interest of G. R. B.*, 330 Ga. App. at 701-02 (holding the record lacked clear and convincing evidence child was deprived when there was no evidence he was harmed by a physical altercation between his father and the mother's boyfriend; except for one minor incident, there was no evidence the child was harmed by prior acts of domestic violence by the parents, and there was no evidence of actual harm resulting from parent's prior drug use); *In the Interest of A. J. H.*, 325 Ga. App. at 852 (holding that "[a]lthough the evidence showed that the mother's conduct in keeping her home and caring for the child may not have been exemplary, it failed to show by clear and convincing evidence that her conduct has been below the requisite standard such that . . . courts should intervene and remove the child from her custody").

[26] We commend the State for its concession that the evidence in this case was insufficient to support the juvenile court's order.