A08A0597. IN THE INTEREST OF L. A. T., a child.
(661 SE2d 679)

MIKELL, Judge.

The paternal grandmother of then three-year-old L. A. T. filed a petition with the juvenile court alleging that the child was deprived. Following a hearing, the juvenile court found L. A. T. to be a deprived child in light of the mother's failure to protect the child from molestation by the mother's boyfriend or to provide proper medical attention for the child's redness around her vulva, anus, and buttocks. The juvenile court ordered that the child be placed in the temporary custody of the grandmother. The mother appeals, claiming that the evidence was insufficient to show that the child was

---

[14] *Camp v. State*, 259 Ga. App. 228, 229 (1) (576 SE2d 610) (2003).

deprived or to authorize her temporary loss of custody. We disagree and affirm.

> On appeal from a juvenile court's order finding deprivation, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the [child was] deprived. We neither weigh evidence nor determine the credibility of witnesses.[1]

So viewed, the evidence adduced at the August 30, 2007, hearing showed the following. According to L. A. T.'s teacher, the child placed a finger in her vagina while she was in the classroom, and she manipulated a boy and girl doll to "hav[e] play sex." The child's grandmother picked her up from school on Thursdays and Fridays, and otherwise the mother's live-in boyfriend, Brandon, picked her up. According to the teacher, L. A. T. only wanted to go with the grandmother and did not want to leave with Brandon.

The child's paternal grandfather testified that L. A. T. asked him to put his hand on her "butt," and wanted him to put her on his shoulders facing him, both of which he refused to do. The child also tried to run her hand up his leg while he was wearing shorts. After he stopped her and asked her who taught her to do that, she screamed, "Brandon," and then ran to the bedroom.

The child's grandmother testified that the child had changed her behavior over the past four or five months, including incidents of bedwetting, nightmares, and "throwing [her] toys all over the room for no reason." On one occasion, when the grandmother was getting ready to bathe the child, she came into the bathroom and saw that the child had put her finger in her vagina. The grandmother told the child not to do that, and the child responded, "Brandon do it." When playing with her doll, the child spread the doll's legs and began kissing the doll between the legs. When the grandmother told the child that she should not do that, L. A. T. said, "Brandon do it." The child also told her grandmother that she took showers with Brandon, during which he touched her "woo-woo" and her "two woo woo[ ]," the child's name for her vagina and anus.

The trial court heard the testimony of Janet Lee Cordes, a forensic interviewer who worked at a child advocacy center. Cordes was qualified, without objection, as an expert witness in the field of child sex abuse. Cordes conducted an interview with L. A. T., a recording of which was entered into evidence and played for the trial

---

[1] (Citation omitted.) *In the Interest of A. R.*, 287 Ga. App. 334 (651 SE2d 467) (2007).

court. During the interview, the child said that Brandon had touched her "butt" and her "woo-woo." According to Cordes, the child's statements were consistent with a child who has been sexually abused. Behavior expected from a sexually abused child, according to Cordes, included acting out sexually, including obsessive masturbation, seductive behavior with adults and other children, nightmares, lashing out in anger, and disclosing a sex act or an act of inappropriate touching. Although evidence showed that the child had changed over a period of months, the mother testified that she failed to notice any abnormal behavior.

The grandmother took four photographs of L. A. T. that were admitted into evidence. Two of the photographs were taken in February 2007, and two of the photographs were taken in August 2007. Three of the photographs show a rash in the child's vaginal area. Upon viewing the photographs, medical doctor Charles Leonard White, Jr., testified that if he had seen a child in this condition he would have treated the child and tried to determine a diagnosis, but that "I also would have reported it as a suspicion of . . . child abuse." On cross-examination, Dr. White admitted that he could not tell from the photographs whether the child had been sexually abused. Medical doctor Denise Workman also reviewed the photographs. According to Dr. Workman, if L. A. T. had presented to her in that condition, she would not have reported the case for potential child abuse based on the rash alone, but that would depend on the "history that came with it."

The mother claims that no trier of fact could have found by clear and convincing evidence that L. A. T. was deprived based on her failure to protect the child from alleged sexual abuse by a live-in boyfriend or to seek medical treatment for the child's vaginal rashes. She further contends that the child's deprivation was not attributable to her parental unfitness so as to authorize her temporary loss of custody. We disagree.

As applicable here, a deprived child is a child "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals."[2] "The petition is brought on behalf of the child and it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue."[3] However,

---

[2] OCGA § 15-11-2 (8) (A).

[3] (Citation and punctuation omitted.) *In the Interest of S. Y.*, 284 Ga. App. 218, 219 (644 SE2d 145) (2007).

[t]o authorize even a loss of temporary custody by a child's parent on the basis of deprivation, the deprivation must be shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child.[4]

It is well established that a parent's failure to protect a child from harm is sufficient to authorize a finding that the child is deprived on account of a lack of proper parental care or control.[5] "[A] juvenile court's primary responsibility is to consider and protect the welfare of the child whose well-being is threatened."[6] The evidence in this case shows that the mother's live-in boyfriend was molesting L. A. T. The mother knew that allegations of sexual abuse had been made against the boyfriend by no later than June 2007 but continued to live with him through the time of the August 30, 2007 hearing.[7] When asked why she continued to live with the boyfriend, she responded "nobody told me not to," and that she assumed she was to go on with her daily life so as "not to jeopardize the investigation."

The mother also failed to seek treatment for the child's vaginal rashes. The mother testified that she was not aware of the rashes, but the trial court specifically found her testimony on this point lacked credibility. The mother argues that the trial court was not authorized to find the child deprived on account of her failure to seek treatment given that the child's condition was never diagnosed and she was otherwise shown to be healthy, but this is not a case where the sole evidence of deprivation is the mother's failure to seek treatment for a child's rash. Significantly, medical testimony showed that, if the child had been presented for treatment in this condition, one doctor would have at least considered the possibility that L. A. T. was being sexually abused and the other doctor would have reported his suspicion of sexual abuse. The mother's failure to seek treatment

---

[4] (Footnote omitted.) *In the Interest of D. N. K.*, 282 Ga. App. 430, 433-434 (1) (638 SE2d 861) (2006).

[5] *In the Interest of A. R.*, supra at 336; *In the Interest of A. S.*, 285 Ga. App. 563, 567 (646 SE2d 756) (2007) (finding of deprivation and loss of temporary custody authorized where child was impregnated by man to whom mother had entrusted her, in violation of safety plan); *In the Interest of V. M. T.*, 243 Ga. App. 732, 736 (3) (534 SE2d 452) (2000) (inability to protect child from abuse amounted to lack of parental care or control).

[6] (Punctuation and footnote omitted.) *In the Interest of S. V.*, 285 Ga. App. 772, 773-774 (648 SE2d 109) (2007).

[7] According to the shelter care order, L. A. T. was in the mother's custody as of August 16, 2007.

is thus probative of her failure to protect the child from molestation as well as the ill effects of the rash itself.

Given the evidence that the mother's live-in boyfriend was molesting L. A. T., that the mother was aware of allegations against the boyfriend but chose to continue to live with him, that she did not seek medical treatment for the child's vaginal rashes, and that the child had exhibited abnormal behavior over a period of months, any rational trier of fact could have found by clear and convincing evidence that L. A. T. was deprived and that the deprivation was a result of the mother's parental misconduct or incapability so as to authorize her temporary loss of custody.[8] We find no error.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED APRIL 30, 2008.

*Ann M. Vaughan*, for appellant.
*Amy B. Harbst*, for appellee.

---

[8] See *In the Interest of S. Y.*, supra at 219-220 (although evidence did not establish how child contracted venereal warts, trial court did not err in finding child deprived and awarding temporary custody of child and the mother's other children to DFCS).