A08A1919. IN THE INTEREST OF R. J. M., a child.
(673 SE2d 527)

MILLER, Chief Judge.

The mother of R. J. M. appeals from the juvenile court's order sustaining a petition for deprivation to which she had stipulated and that continues custody of R. J. M. with the Fulton County Department of Family and Children Services (the "Department") pending a final disposition.[1] The mother claims that under the terms of an agreement she entered into with the Department and R. J. M.'s Child Advocate, the juvenile court was required to return custody of R. J. M. to her under a protective order. The mother further claims that once the juvenile court decided not to return R. J. M. to her, it should have allowed her to withdraw her stipulation to the petition for deprivation. Discerning no error, we affirm.

---

[1] The juvenile court's order also sustained the petition as to R. J. M.'s father, but the father did not appeal.

On appeal from a finding of deprivation, we view the evidence favorably to the juvenile court's judgment and determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived and whether, under the circumstances, the court properly awarded temporary custody of the child.

(Punctuation and footnote omitted.) *In the Interest of W. A. P.*, 293 Ga. App. 433, 433-434 (667 SE2d 197) (2008).

So viewed, the record shows that on or about November 9, 2007, R. J. M., who was four years old at the time, told her mother that her father had sexually abused her. The mother reported the outcry to the police and took R. J. M. to a child protection agency for an examination. The mother informed the police that she had noticed that R. J. M. acted strangely after her father babysat her; that R. J. M. had reported that her father stuck his fingers and hand in her vagina; and that she was suspicious of the father's relationship with R. J. M. R. J. M. confirmed during a forensic interview that her father had sexually abused her. The father was later arrested at the parents' home on charges of sexual battery and child molestation.

On November 15, 2007, Ameerah McBride, a caseworker with the Department, received a referral regarding R. J. M. On November 26, 2007, McBride made an unannounced home visit. During the visit, the mother indicated that she did not believe that the sexual abuse occurred. The mother also told McBride that R. J. M. had "acidic urine," which caused irritation in her vaginal area. Two days later, McBride spoke with R. J. M., who told her that "[m]y dad had sex with me."

Thereafter, on December 10, 2007, McBride spoke with the mother during another home visit. The mother told McBride that she wanted R. J. M. to recant her allegations against the father. After the visit, McBride learned that the mother had bonded the father out of jail on December 7, 2007. The bond order prohibited the father from having any contact with R. J. M.

On December 13, 2007, the Department filed a Petition for Deprivation and Application for Protective Order requesting issuance of a protective order prohibiting the father from having contact with R. J. M. but allowing R. J. M. to remain in the mother's custody, subject to a safety plan and provided that she did not speak with R. J. M. about the sexual abuse. The Department subsequently determined, however, that R. J. M. was not safe in the home and placed R. J. M. with her maternal aunt on December 21, 2007. On December 28, 2007, the mother called McBride and told her that the father was moving back in since R. J. M. was living with her aunt.

On January 10, 2008, R. J. M.'s maternal aunt contacted the Department and reported that the mother was not providing financial support for R. J. M. and refused to assist her with setting up a doctor's appointment so that R. J. M. could obtain asthma medication. The aunt further stated that the mother had threatened to have R. J. M. accuse the aunt's husband of abusing her. On the same day, the Department filed a deprivation complaint and sought emergency shelter care for R. J. M., which the juvenile court authorized. Following a hearing on January 14, 2008, the juvenile court found probable cause and placed temporary custody of R. J. M. with the Department.

On January 16, 2008, the Department filed an Amended Petition for Deprivation ("Amended Petition"). Prior to the February 29, 2008 hearing on the Amended Petition, the mother and R. J. M.'s Child Advocate stipulated to the Amended Petition after the Department agreed to strike and add certain language. At the beginning of the hearing, the parties advised the juvenile court of their stipulation.[2]

At the hearing, McBride testified for the Department in order to establish a prima facie case against the father, and the father's counsel, and the Child Advocate also examined McBride. At the conclusion of the hearing, the juvenile court sustained the Amended Petition as to the mother and father and asked for the Child Advocate's recommendation as to disposition. Expressing some reluctance, the Child Advocate recommended that R. J. M. be returned to the mother under a protective order and that the parties return to court in 60 days.[3] Counsel for the Department then advised the juvenile court that the parties had agreed upon the terms of a protective order to be submitted for the court's approval and explained the proposed terms.

Ultimately, the juvenile court continued the final disposition in the case for 30 days and requested the recommendations of R. J. M.'s therapist and submission of a case plan by the Department. The juvenile court continued custody of R. J. M. with the Department but granted the Department authority to place R. J. M. with the mother pending final disposition if the Department deemed it safe and appropriate. On April 8, 2008, the mother filed a motion requesting a new adjudicatory hearing, asserting that she had "stipulated to a finding of deprivation with the understanding [R. J. M.] would be returned to her custody under a Protective Order" and "[did] not

---

[2] In light of the criminal charges against him, the father did not stipulate to the Amended Petition.

[3] By the time of the deprivation hearing, the Department had apparently placed R. J. M. with her maternal aunt again.

believe that she [was] responsible for her child being deprived. . . ." On April 7, 2008, the juvenile court issued an order sustaining the Amended Petition.[4] This appeal followed.

1. The mother contends that the juvenile court was bound by an agreement reached by the parties that the mother would stipulate to the Amended Petition and the Department and Child Advocate would then recommend that R. J. M. be returned to the mother under a protective order. We disagree.

To the extent the parties agreed that the mother's stipulation was to be given in return for the Department and Child Advocate recommending that R. J. M. be returned to the mother under a protective order, the record reflects that the Department and Child Advocate complied with that agreement. At the hearing on the Amended Petition, the Department's counsel advised the juvenile court that the parties had agreed upon the terms of a protective order to be submitted for the court's approval. The juvenile court, however, was in no way bound to accept the parties' proposed disposition. As discussed below, the juvenile court was not only authorized to continue temporary custody in the Department pending a final disposition but was required to do so if it deemed this provisional disposition to be necessary to protect R. J. M.'s welfare.

Here, the mother stipulated that R. J. M. was deprived. Once a child is found to be deprived, the juvenile court "may make any of the following orders of disposition best suited to the protection and physical, mental, and moral welfare of the child," including an order placing a child in the Department's custody. OCGA § 15-11-55 (a). A parent's temporary loss of custody is authorized when a child's deprivation is "shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child." (Punctuation and footnote omitted.) *In the Interest of W. A. P.*, supra, 293 Ga. at 435. On numerous occasions, we have stated that in deciding issues of deprivation and temporary custody, "[a] juvenile court's primary responsibility is to consider and protect the welfare of the child whose well-being is threatened." (Punctuation and footnote omitted.) *In the Interest of L. A. T.*, 291 Ga. App. 312, 315

---

[4] Apparently, the juvenile court inadvertently failed to include its provisional disposition in its April 7, 2008 order. On April 15, 2008, after the mother filed her notice of appeal, the juvenile court vacated the April 7 order and issued another order that was identical to the April 7 order but which explained the provisional disposition. The juvenile court lacked jurisdiction to modify its April 7 order, *Davis v. Harpagon Co.*, 281 Ga. 250, 253 (8) (637 SE2d 1) (2006), but we note that the transcript of the deprivation hearing reflects the juvenile court's provisional disposition.

(661 SE2d 679) (2008) (mother's temporary loss of custody warranted where evidence showed mother continued to live with boyfriend despite awareness of allegations that he had sexually abused her daughter and failed to seek treatment for daughter's vaginal rashes).[5]

McBride's testimony at the hearing on the Amended Petition established that, while the mother initially reported R. J. M.'s outcry against her father to the police, by the time McBride first visited the mother, the mother had decided that she did not believe R. J. M.'s allegations against the father. During a subsequent visit, the mother told McBride that she wanted R. J. M. to recant her allegations. After R. J. M. was removed from the home, the mother informed McBride that the father was moving back into the house. In light of this testimony and the allegations of the Amended Petition to which the mother stipulated, the juvenile court was authorized to find by clear and convincing evidence that R. J. M.'s deprivation resulted from the mother's unfitness in, among other things, failing to protect R. J. M. from abuse and in refusing to believe R. J. M.'s allegations against the father. See *In the Interest of L. A. T.*, supra, 291 Ga. App. at 315 ("It is well established that a parent's failure to protect a child from harm is sufficient to authorize a finding that the child is deprived on account of a lack of proper parental care or control.") (footnote omitted.).

As such, the juvenile court was authorized to continue temporary custody of R. J. M. with the Department pending its final disposition, while giving the Department authority to place R. J. M. with the mother if the Department deemed it safe and appropriate to do so. Had the juvenile court merely followed the parties' recommended disposition despite the reservations it had about immediately returning R. J. M. to the mother, the juvenile court would have acted contrary to its fundamental obligation in deprivation proceedings to protect the welfare of the child. *In the Interest of L. A. T.*, supra, 291 Ga. App. at 315.

2. The mother next claims that having declined to return custody of R. J. M. to her, the juvenile court should have allowed her to withdraw her stipulation to the Amended Petition. We disagree.

---

[5] See also *In the Interest of T. R.*, 270 Ga. App. 401, 406 (3) (606 SE2d 630) (2004) (finding of deprivation as to mother supported by sufficient evidence where record showed, inter alia, that mother's ex-husband sexually abused child when mother allowed child to have contact with him in violation of court order); *In the Interest of B. H.*, 190 Ga. App. 131, 133 (1) (378 SE2d 175) (1989) (juvenile court did not abuse discretion in removing custody of child from mother where evidence showed mother did not believe daughter's allegations that father had sexually abused her and refused to agree to protect daughter by removing father from home).

A stipulation operates as an admission in judicio and "is conclusive and binding upon the party [making the stipulation]. . . ." (Citations and punctuation omitted.) *In the Interest of M. O.*, 233 Ga. App. 125, 128 (1) (503 SE2d 362) (1998); *McDaniel v. Oliver*, 172 Ga. App. 109, 110 (322 SE2d 1) (1984) (a stipulation "is binding on the parties and may not be disproved") (citation omitted).

> Parties to stipulations and agreements entered into in the course of judicial proceedings are estopped from taking positions inconsistent therewith, and no litigant will be heard to complain unless it be made plainly to appear that the consent of the complaining party was obtained by fraud or mistake.

(Citation and punctuation omitted.) *Wright v. Stuart*, 229 Ga. App. 50, 51 (1) (494 SE2d 212) (1997).

The mother does not claim that her consent was obtained by fraud or mistake or assert any other valid reason the juvenile court should have allowed her to withdraw her stipulation. The mother claims that it is was "clear by the language of the parties in the amended deprivation petition" and the remarks of the parties' counsel that her stipulation was conditional on the juvenile court's acceptance of the parties' proposed disposition, but the record does not support this assertion. The stipulation signed by the mother's counsel nowhere indicates that the stipulation was conditional. At the hearing on the Amended Petition, none of the parties' counsel indicated that the mother's stipulation was conditional or that she was reserving the right to withdraw the stipulation if the juvenile court did not accept the parties' recommended disposition. Accordingly, the juvenile court was not required to allow the mother to withdraw her stipulation.

For the reasons set forth above, we affirm the juvenile court's order sustaining the Amended Petition for Deprivation.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 10, 2009.

*Phillip Jackson*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Kathryn A. Fox, Assistant Attorney General, Elna L. Reese, Anissa R. Patton*, for appellee.