**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 2, 2023**

# In the Court of Appeals of Georgia

A22A1237. IN THE INTEREST OF C. E. JR., a child.

MARKLE, Judge.

In October 2020, the juvenile court found then-11-year-old C. E., Jr. delinquent, removed him from his parents' custody, and placed him with his maternal aunt. The juvenile court later found that the child could not be returned to his parents' custody because he was dependent due to educational neglect, lack of proper supervision, and unstable housing. The mother now appeals, raising various errors at the preliminary protective hearing (PPH) and the subsequent adjudication hearing, and arguing that there was a lack of clear and convincing evidence to support the juvenile court's finding of dependency. For the reasons that follow, we affirm.

"On appeal from an adjudication of dependency, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any

rational trier of fact could have found by clear and convincing evidence that the children are dependent." (Citations and punctuation omitted.) *In the Interest of H. B.*, 346 Ga. App. 163 (816 SE2d 313) (2018); see also *In the Interest of K.*, 353 Ga. App. 855, 857-858 (840 SE2d 76) (2020). "[U]nder Georgia law, clear and convincing evidence is an intermediate standard of proof which is greater than the preponderance of the evidence standard ordinarily employed in civil proceedings, but less than the reasonable doubt standard applicable in criminal proceedings." (Citations and punctuation omitted.) *In the Interest of K. M.*, 344 Ga. App. 838, 847 (2) (811 SE2d 505) (2018).

So viewed, the record shows that early one morning in October 2020, police detained several boys who were caught damaging store windows. C. E. admitted his involvement and that he was not enrolled in school, and he was held as a delinquent. As a result, the juvenile court ordered him removed from his parents' home and placed in shelter care. A few days later, the juvenile court held a PPH,[1] at which the

---

[1] Under OCGA § 15-11-146 (a), the juvenile court must hold a preliminary protective hearing to "determine: (1) Whether there is probable cause to believe a child is a dependent child; and (2) Whether protective custody of a child is necessary to prevent abuse or neglect pending the hearing on the dependency petition." If the juvenile court determines that there is probable cause, it may remove the child from the parent's custody and place him or her in the custody of DFCS or another adult family member if it finds that "Continuation in his or her home would be contrary to

Division of Family and Children Services (DFCS) investigator testified that she met with the parents after C. E. was held as a delinquent, and the mother agreed to enroll C. E. in school within the next week. She met with the parents a second time after learning of C. E.'s involvement in burglary of a store, and the mother admitted that she was unaware the child had left the hotel in which they were staying. The investigator opined that C. E. could be returned to the parents with conditions, such as the use of an ankle monitor. The court concluded that there was probable cause to find C. E. dependent due to educational neglect and lack of supervision, and that returning him to his parents' home would be contrary to his welfare.

DFCS then filed a dependency petition, citing educational neglect and other possible instances of neglect that it might learn of during its investigation. The child was placed in the custody of his aunt, and the parents were given unsupervised daytime visitation.

Two months later, at an adjudication hearing, the parties informed the court that the mother was willing to stipulate that C. E. was dependent and she agreed to certain conditions that would allow C. E. to return to his parents. By this time, C. E.

such child's welfare; or (2) Removal is in such child's best interests." OCGA § 15-11-146 (c), (b) (3).

3

had been enrolled in school. After the court indicated its intent to accept the stipulation, the probation officer expressed concerns that the mother had removed the child from the aunt's custody overnight without permission, and there was an allegation that the father had been sexually involved with a minor boy. The attorneys admitted that they were unaware of these concerns prior to reaching their agreement. Due to these new allegations, the juvenile court explained that it was hesitant to accept the stipulation, and it continued the hearing.

When the hearing reconvened a few days later, the mother argued that the juvenile court could only consider educational neglect because that was the sole issue listed in the dependency petition. The court explained that it was concerned that the child lacked proper or adequate supervision. Because both the mother and DFCS requested another continuance, however, the court again continued the dependency hearing.

At the next hearing, the juvenile court took judicial notice of the prior orders and other records, over the mother's objection. The court then heard testimony from a probation officer who had come in contact with a 16-year-old boy claiming that C. E.'s father was his boyfriend and that he had been living in the hotel room with C. E.'s family. The DFCS investigator also testified that she had spoken with the mother

4

when DFCS initially became involved in the case, and the mother refused to provide any information about C. E.'s previous school enrollment. A week after the investigator spoke with the mother, C. E. still had not been enrolled, but once the child was placed with his aunt, the situation was remedied. Thus, the investigator agreed that the issues of educational neglect had been resolved.

When the investigator began to testify about supervision concerns, the mother objected on the ground that the dependency petition only identified educational neglect. The court overruled the objection, noting that issues of inadequate supervision had been discussed at the prior hearings, and there was no unfair surprise to the parents. The investigator then explained that, the night C. E. had been caught damaging store windows, the mother had been unaware C. E. was involved because he had been spending the night with an unidentified friend who also lived in the hotel.

Based on the testimony, the juvenile court found C. E. dependent due to educational neglect and lack of adequate supervision, and it then considered additional testimony to determine the proper temporary disposition. A caseworker from DFCS confirmed that the case plan was reunification, but she noted that the father had been non-compliant in completing assessments, and the mother had removed the child from the aunt's care without permission. The case worker also

5

explained that she had been unable to evaluate the family's living conditions, as the parents had been living in at least three different hotels during the pendency of the case.

The mother then testified that the allegations regarding the father's relationship with the 16-year-old boy were untrue.[2] She confirmed that both she and the father were employed, and they worked different shifts so that C. E. would be supervised if he returned home. She admitted that she did not know that name of C. E.'s friends at the hotel. She further explained that it was a misunderstanding when she removed C. E. from the aunt's home without permission, and she returned C. E. as soon as she was notified. In response, the probation officer testified that she had been unable to reach the mother for several days after the mother took C. E. without permission, yet the mother responded to phone calls from other family members.

Based on the testimony, the court stated it was contrary to the child's welfare to return him to his parents. The court expressed concern that the mother did not know the name of the friend with whom C. E. spent the night. In its written order, the court found the child dependent due to educational neglect, lack of parental supervision, and unstable housing.

---

[2] The father also testified that there was no such relationship.

In January 2021, the court conducted a disposition hearing and initial judicial review. At this hearing, the case manager testified about the case plan for reunification, but she noted that the parents had been non-compliant with some of the case plan goals. The mother objected to any tasks, such as drug testing and mental health assessments, that were unrelated to the educational neglect and supervision concerns that formed the basis of the dependency finding. The case worker explained that DFCS was trying to assess whether there were issues affecting the mother's ability to manage the child's education and supervision. According to the case worker, the mother had a history of domestic violence and battery charges, and there was a family history of substance abuse. The case worker also expressed concerns about stable housing and employment, noting that the parents had not submitted pay stubs and had recently moved to another hotel without informing DFCS. The case worker stated that C. E. was regularly attending school, but he was well behind his grade, and she feared C. E. would fall further behind without the consistent structure his aunt provided. In her testimony, the mother promised to notify DFCS of any new address or phone number. She explained that either she, the father, or her 18-year-old son would supervise C. E.

The court appointed special advocate ("CASA") submitted a report recommending that C. E. remain in the aunt's custody due to the lack of stable housing and supervision. The CASA noted that C. E. was performing at a third grade level, but he should have been in fifth grade. The court also reviewed the case plan, which included that the father complete various assessments; the mother complete a psychological assessment, individual therapy, and drug testing; and that both parents obtain stable housing and incomes. The case plan noted that the mother had refused any mental health assessments.

The court found that there was clear and convincing evidence of C. E.'s dependency because the circumstances that brought him into custody had not been remedied. The court expressed concerns that the family changed hotels without notifying DFCS, and that one of the bases for the prior dependency findings had been unstable housing. In adopting the case plan without changes, the court stated it was concerned that the parents repeatedly refused to keep appointments for assessments that were part of the case plan. The court noted that the drug testing and mental health screening could help determine the cause of the mother's inconsistent behavior and any obstacles to the parents' ability to adequately supervise C. E. The court also

8

continued to order supervised visitation. The mother filed a notice of appeal from this order.[3]

On appeal, the mother raises numerous allegations of error, specifically that the juvenile court erred by: (1) finding sufficient evidence at the PPH to remove the child from the home; (2) calling its own witness at the PPH; (3) adopting a case plan that included requirements not relevant to the issues of dependency listed in the petition; (4) allowing hearsay testimony from the probation officer; (5) allowing the probation officer to testify at the adjudication hearing after the court has accepted the parties' stipulation; (6) considering other allegations of neglect beyond those listed in the petition' (7) considering older testimony to make a finding of present dependency; (8) making a mistake of fact when it included unstable housing in its order when that was not part of the court's oral findings; (9) finding that family had

---

[3] Thereafter, the court entered a permanency order, continuing the finding of dependency, but allowing the mother unsupervised visitation. At a hearing in August 2021, the juvenile court noted that there was no evidence of the parents' income and that the parents had moved again. The court further noted that there was no plan to seek termination of parental rights. In January 2022, the court concluded that the parents were not ready for reunification because they had not obtained stable housing, visitation had been inconsistent, and the mother had lost her employment. Based on a recommendation from DFCS, the juvenile court ordered concurrent planning — one for reunification and one for permanent guardianship. The propriety of these rulings is not before us.

unstable housing; (10) finding clear and convincing evidence to support a finding that the child could not remain in the parents' home; and (11) keeping the child in custody when the alleged issues of dependency had been remedied.[4] We find these arguments unpersuasive.

Before we turn to the arguments on appeal, we first set out the relevant case law. "Under the most recent version of Georgia's Juvenile Code, the juvenile court may place a minor child in the protective custody of the Department where the State shows, by clear and convincing evidence, that the child is a 'dependent child.'" (Citations and footnote omitted.) *In the Interest of S. C. S.*, 336 Ga. App. 236, 244 (784 SE2d 83) (2016). The term "dependent child" is defined as a child who "[h]as been . . . neglected and is in need of the protection of the court." OCGA § 15-11-2 (22) (A). The Code defines "neglect" as "[t]he failure to provide proper parental care or control, subsistence, education as required by law, or other care or control

---

[4] We have jurisdiction to consider the mother's appeal. See *In the Interest of S. W.*, 363 Ga. App. 666, 669-670 (1) (872 SE2d 316) (temporary order involving visitation is directly appealable, and the appellant may raise challenges to earlier, unappealed orders); *In the Interest of K.*, 353 Ga. App. 855, 857 (840 SE2d 76) (2020) (court had jurisdiction where there were additional orders after the mother filed notice of appeal from initial dependency order); *In the Interest of J. D.*, 267 Ga. App. 103, 103-104 (598 SE2d 842) (2004) (premature notice of appeal ripened once final order filed).

necessary for a child's physical, mental, or emotional health or morals." OCGA § 15-11-2 (48) (A).

When determining whether a child is without proper parental care or control, the court may consider factors including whether the parent has any medically verifiable health condition or history of substance abuse that renders the parent unable to properly care for the child. OCGA § 15-11-311 (a) (1)-(2). The juvenile court may consider evidence of past neglect as long as there is evidence in the record of present dependency.

See *In the Interest of H. B.*, 346 Ga. App. at 165 (1). "Moreover, a finding of parental unfitness is essential to support an adjudication of present dependency." Id.; see also *In the Interest of V. G.*, 352 Ga. App. 404, 412 (1) (b) (834 SE2d 901) (2019). And,

> [w]hen a juvenile court is faced with a petition to find a child dependent, such a petition is brought on behalf of the child and it is the *child's* welfare and *not* who is responsible for the conditions which amount to dependency that is the issue. Indeed, the definition of "dependent" focuses upon the *child's* needs and situation.

(Citations and punctuation omitted; emphasis in original) *In the Interest of K.*, 353 Ga. App. at 863.

Our review does not permit us to weigh the evidence or make credibility determinations, and we must instead defer to the juvenile court's factual findings. *In the Interest of H. B.*, 346 Ga. App. at 163. "Further, where as here, the child has already been removed from the parent's custody, the correct inquiry for the juvenile court is whether the child would be dependent if returned to the parent's care and control as of the date of the hearing." (Citation and punctuation omitted.) *In the Interest of M. S.*, 352 Ga. App. 249, 257 (834 SE2d 343) (2019).

With these standards and definitions in mind, we turn to the mother's allegations of error.

1. *The PPH hearing*.

The mother first argues that there was insufficient evidence at the PPH to support removal of the child from the home, and that the juvenile court erred when it called its own witness at the PPH. However, the mother's challenges to the PPH hearing are moot now that there has been an adjudication of dependency.[5] *In the Interest of P. M.*, 201 Ga. App. 100 (410 SE2d 201) (1991) (any alleged error in the

---

[5] Moreover, C. E. was not removed from his home by DFCS pursuant to the PPH. Rather, the child was removed as part of the delinquency proceedings before the dependency petition was filed. See OCGA § 15-11-504 (a) (permitting detention of alleged delinquent child).

lack of notice regarding extending temporary custody was moot once child had been adjudicated deprived); see also *In the Interest of Q. A.*, 306 Ga. App. 386, 387 (1) (702 SE2d 701) (2010) (any procedural error was moot after juvenile court adjudicated child deprived).[6]

2. *The case plan*.

The mother next contends that the juvenile court erred when it approved the case plan because it was untimely and included tasks not relevant to the allegations of dependency as set forth in the petition. She acknowledges, however, that the court explained that the tasks, including drug testing, family counseling, and domestic violence assessments, were used to determine if there were any obstacles preventing the mother from providing adequate supervision. We discern no error.[7]

---

[6] Cases prior to 2014 use "deprived" instead of "dependent," and we have held that our prior case law in deprivation cases is relevant to appeals involving dependency issues. *In the Interest of K.*, 353 Ga. App. at 857, n. 4.

[7] Generally, DFCS must submit a written report that either includes a case plan for reunification or explains why reunification is not appropriate within 30 days of the child's placement in DFCS custody. OCGA § 15-11-200 (a). It does not appear that DFCS did so in this case. Although the mother objected to the case plan during the hearing, she did not do so on timeliness grounds. We do not consider arguments raised for the first time on appeal. *In the Interest of S. P.*, 282 Ga. App. 82, 84 (2) (637 SE2d 802) (2006). Regardless, the mother has not alleged or shown how she was harmed by the untimely case plan given that she filed objections to it and the juvenile court considered her objections before making its ruling. See *In the Interest of D. W.*,

13

Under OCGA § 15-11-201 (b) (4), the case plan should include "[s]pecific time-limited goals and related activities designed to enable the safe return of such child to his or her home[.]" Here, the juvenile court explained that it was seeking to determine whether there were psychological barriers, and drug and family violence issues, that were impacting the mother's ability to adequately supervise her child, and that there was a factual basis for each task in the case plan. See OCGA § 15-11-212 (a) (4) ("The court may . . . [o]rder such child and his or her parent, guardian, or legal custodian to participate in counseling or in counsel and advice as determined by the court. Such counseling . . . shall be designed to assist in deterring future conditions of dependency[.]"). Based on the evidence, as recounted above, the juvenile court did not err by upholding the case plan. See OCGA § 15-11-210 (b), (c) (4) (at disposition hearing, juvenile court may hear any evidence that is relevant).

3. *Adjudication hearing.*

In related enumerations of error, the mother contends that the juvenile court improperly (a) admitted hearsay evidence regarding an alleged relationship between

---

294 Ga. App. 89, 94 (3) (a) (668 SE2d 533) (2008) (juvenile court's error in referring to evaluation that was not in the record did not require reversal because "[a]n appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful.") (citation omitted).

the father and a minor; (b) allowed the probation officer to make a statement after the court had accepted the parties' stipulation; (c) considered other allegations of abuse or neglect that were not specifically and explicitly identified in the petition; (d) relied on old evidence to find the child dependent; and (e) based its ruling on an alleged lack of stable housing. We find no merit to any of these arguments.

(a) *Hearsay*.

The mother contends that the juvenile court erred in considering hearsay testimony. But our law is clear that the court may rely on and consider such evidence. OCGA §§ 15-11-181 (d); 15-11-210 (b), (c) (4) (court may consider any evidence, including hearsay, relevant to disposition); *In the Interest of H. B.*, 346 Ga. App. at 171 (4) (reviewing admission of evidence for abuse of discretion). Thus, this enumeration is without merit.

(b) *Stipulation*.

The mother also challenges the juvenile court's hearing additional testimony after it accepted the stipulation. Notably, the mother cites no case law in support of her allegation of error. But regardless of whether the juvenile court accepted the stipulation and then rejected it, the law is clear that the court is not bound by the

15

parties' recommended disposition.[8] See *In the Interest of R. J. M.*, 295 Ga. App. 886, 888-890 (1) (673 SE2d 527) (2009) (juvenile court is not bound to accept recommended disposition in exchange for mother's stipulation, and once mother stipulated to deprivation, juvenile court was required to make disposition that was "best suited to the protection and physical, mental, and moral welfare of the child.") (citation omitted); see also *In the Interest of S. W.*, 363 Ga. App. 666, 673 (4) (872 SE2d 316) (2022); OCGA § 15-11-212 (a). Given that the juvenile court is authorized to hear any relevant evidence, and it is not bound by any stipulation, the mother has not shown error.

(c) *Consideration of other allegations of neglect.*

The mother's argument that the dependency petition could not rely on a catch-all provision is grounded in due process and the right to notice. But the mother was not deprived of notice because the juvenile court alerted her to its concern over lack of adequate supervision and stable housing, and it gave her the opportunity to address those potential bases for dependency. *In the Interest of C. A. B.*, 347 Ga. App. 474,

---

[8] The mother made it clear that she would not stipulate to dependency if the child was not returned. Therefore, we conclude that the mother is not bound by her stipulation in subsequent proceedings. See *In the Interest of R. J. M.*, 295 Ga. App. at 891 (2) (mother was bound by stipulation where there was no indication that it was conditional on court's acceptable of recommended disposition).

16

478-479 (819 SE2d 916) (2018) (no error in considering grounds not listed in petition); see also *In the Interest of A. B.*, 350 Ga. App. 575, 579-580 (3) (829 SE2d 842) (2019) (no reversible error where mother failed to show she was harmed by the procedural violation); *In the Interest of K. C. W.*, 297 Ga. App. 714, 717 (1) (678 SE2d 343) (2009) (court could consider other allegations not listed in petition where parent had notice and opportunity to present evidence). Here, the petition listed "other conditions . . . as may be revealed in the course of the Department's investigation," and the juvenile court repeatedly addressed issues of supervision and stable housing. Because the mother was given notice of the issues the court would be considering, and she had the opportunity to present evidence and make objections, she has not shown any error.

To the extent that the mother complains that the juvenile court's written order contains grounds for dependency that were not cited in the court's oral pronouncement, that argument is without merit. A court's written order controls over its oral pronouncement. See *In the Interest of J. J.*, 317 Ga. App. 462, 463 (2) (731 SE2d 766) (2012) ("a trial court's oral pronouncements are not binding because, while they may provide insight on the intent of the subsequent written judgment, any

17

discrepancy between the written judgment and oral pronouncements is resolved in favor of the written judgment.").

(d) *Consideration of old evidence*.

The mother further asserts that the court improperly considered old evidence of dependency to determine that the child could not be returned to the home. This argument is without merit. The juvenile court was within its authority to consider past evidence of dependency, such as educational neglect, lack of supervision, and stable housing to determine if there remained any present showing of dependency. *In the Interest of H. B.*, 346 Ga. App. at 165 (1). Moreover, "[i]t is well settled that a court may take judicial notice of records in the same court." (Citation and punctuation omitted.) *In the Interest of R. J. D. B.*, 305 Ga. App. 888, 898 (4) (b) (700 SE2d 898) (2010).

(e) *Stable housing*.

The mother next contends that the family's housing situation did not constitute a basis for dependency. Contrary to the mother's contention, a lack of stable housing can be a basis to find a child dependent *if* it rises to the necessary level. *In the Interest of R. S. T.*, 345 Ga. App. 300, 308 (1) (b) (812 SE2d 614) (2018); compare *In the Interest of A. M. B.*, 361 Ga. App. 551, 556-557 (a) (864 SE2d 713) (2021) ("the

18

record does not contain any evidence that the mother's past housing issues rose to the necessary level of present 'egregious conduct' or amounted to present 'physical, mental, or emotional neglect' of the children."). Thus, the juvenile court was permitted to consider stability in housing when evaluating evidence of present dependency.

4. *Dependency*.

Having disposed of the mother's procedural arguments, we turn to whether there was clear and convincing evidence to support a finding of dependency and the child's removal from the parents' home. The mother argues that the juvenile court erred because the causes for dependency had been remedied. We are not persuaded.

At the adjudication hearing, the juvenile court made findings that the child was not enrolled in school for an extended period of time; the child had been out in the middle of the night without his parents' knowledge; the mother was unable to name the people with whom the child had been spending the night; the family had been living in a series of motels; and the mother removed the child from his aunt's home and did not return the child for several days despite the fact that she was not allowed to have overnight visitation. The juvenile court also considered that the parents had repeatedly moved without informing DFCS of the change, and there was no evidence

19

to support the parents' plan for supervising C. E. while they were at work. These findings led the court to consider C. E. dependent due to educational neglect and the lack of stable housing, and to find that returning the child to the home would be contrary to his welfare. OCGA § 15-11-2 (48) (A) (neglect includes lack of parental supervision and lack of educational involvement); *In the Interest of Z. H. T.*, 302 Ga. App. 424, (691 SE2d 292) (2010) (finding child deprived where mother had failed to cooperate with DFCS, did not inform DFCS of housing, refused to complete evaluations, and failed to perform other case plan tasks); *In the Interest of J. C.*, 264 Ga. App. 98, 600 (1) (591 SE2d 475) (2003) (evidence of educational neglect to support dependency determination).

Although the record confirms that C. E. was enrolled in school by the time of the adjudication hearing, he remained behind his expected grade level. The juvenile court thus was within its authority to consider whether returning C. E. to his parents would be contrary to his welfare. And, there was evidence that the mother had not completed several tasks listed in the case plan, including assessments that could have identified barriers to her ability to provide appropriate supervision. See OCGA § 15-11-311 (b) (3) (court shall consider parent's failure to comply with case plan); *In the Interest of A. K.*, 272 Ga. App. 429, 436 (1) (c) (612 SE2d 581) (2005) ("Repeated

20

failure to comply with case plan goals may show that the cause of the deprivation is likely to continue.") (footnote omitted). This refusal to cooperate with the case plan hampered the court's ability to fully assess her parental fitness and ability to supervise her child. Additionally, the family had moved several times without notifying DFCS of their contact information, leaving DFCS unable to confirm housing stability. *In the Interest of R. S. T.*, 345 Ga. App. at 308 (1) (b). The record thus shows that there was clear and convincing evidence to support the juvenile court's determination that the child remained dependent. See *In the Interest of M. M.*, 315 Ga. App. 673, 676-677 (2) (727 SE2d 279) (2012) (evidence of lack of stable housing and employment, mother's arrests, refusal to follow case plan, and failure to support children established dependency); *In the Interest of V. D.*, 303 Ga. App. 155, 157 (1) (692 SE2d 780) (2010) (child dependent due to lack of stable housing and supervision); *In the Interest of J. S.*, 295 Ga. App. 861, 863-864 (673 SE2d 331) (2009) (lack of stable housing and employment were proper considerations for dependency).

Because the mother had not shown that she had stable housing or the ability to provide adequate supervision, she refused to complete her case plan tasks, and she repeatedly failed to notify DFCS when the family moved, the juvenile court was

within its authority to conclude that the child remained dependent and the aunt should continue to have custody.[9] OCGA § 15-11-212 (a) (2) (A).

*Judgment affirmed. Mercier, J., concurs. Dillard, P. J., concurs in judgment only.*

---

[9] It does not appear that the juvenile court made an express finding that the mother was unfit. But the mother does not allege error in this regard. See *In the Interest of K. K.*, 364 Ga. App. 82, 85-86 (874 SE2d 110) (2022). Thus, she has abandoned it. *In the Interest of C. S.*, 354 Ga. App. 133, 140 (1), n. 21 (840 SE2d 475) (2020) (errors not raised in briefs are abandoned).

# In the Court of Appeals of Georgia

A22A1237. IN THE INTEREST OF C. E. JR., A CHILD (MOTHER).

DILLARD, Presiding Judge, concurring in judgment only.

I concur in judgment only because I do not agree with all that is said in the majority opinion. Even so, I do agree with the majority's ultimate conclusion that the juvenile court was well within its authority to determine that the child remained dependent and the aunt should continue to have custody of the child.

2