**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**February 20, 2024**

# In the Court of Appeals of Georgia

A23A1764. IN THE INTEREST OF M. J. H., a child.

MILLER, Presiding Judge.

In this second appeal before this Court of this custody dispute, see *In the Interest of M. J. H.*, 366 Ga. App. 872 (884 SE2d 559) (2023), Daniel Hernandez-Romero, the uncle and custodian of M. J. H., appeals from the trial court's order finding M. J. H. dependent and granting Hernandez-Romero custody of M. J. H. On appeal, Hernandez-Romero challenges the trial court's findings related to M. J. H.'s application for Special Immigrant Juvenile ("SIJ") status - specifically, that reunification with the child's mother was viable and that it was in M. J. H.'s best interest to return to his home country of Guatemala. Because there was some evidence

to support the trial court's findings, we conclude that the trial court did not abuse its discretion, and we therefore affirm.

> On appeal from an adjudication of dependency, we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child[ is] dependent. We neither weigh the evidence nor judge the credibility of the witnesses, but instead defer to the factual findings made by the juvenile court, bearing in mind that the juvenile court's primary responsibility is to consider and protect the welfare of a child whose well-being is threatened.

(Citations and punctuation omitted.) *In the Interest of H. B.*, 346 Ga. App. 163 (816 SE2d 313) (2018).

> The general facts of this case can be found in our previous opinion:

> [T]he record shows that M. J. H. was born in Guatemala on January 28, 2004. When he came to the United States in 2016, he was apprehended by Border Patrol officials and released to the care of his uncle, Daniel Hernandez-Romero. Since then, M. J. H. has lived with his uncle and has attended school in DeKalb County. He wishes to remain in the United States and complete high school.

> Hernandez-Romero filed a petition requesting a finding of dependency for M. J. H. under OCGA § 15-11-2 (22) so that he could obtain legal custody over M. J. H. As part of the petition, Hernandez-Romero

2

requested that the juvenile court make two additional conclusions of law which would enable M. J. H. to petition the United States Citizenship and Immigration Services for Special Immigrant Juvenile ("SIJ") status and, if approved for SIJ status, for lawful permanent residence status. In support of his petition, Hernandez-Romero submitted a sworn affidavit from M. J. H.'s mother stating that she admits the allegations contained in the dependency petition and consents to custody of M. J. H. being granted to Hernandez-Romero. He also submitted the U.S. Department of State's Guatemala 2020 Crime & Safety Report, which advises that "Guatemala remains among the most dangerous countries in the world" due to "[e]ndemic poverty, an abundance of weapons, a legacy of societal conflict, and the presence of organized criminal gangs."

At the juvenile court's hearing on the petition, M. J. H. testified that when he lived in Guatemala, he lived with his mother and his grandparents. He attended school until he was nine or ten years old, then he stopped going to school so he could earn money for his family. He came to the United States when he was twelve years old because, although he was working very hard, it was not sufficient to support his family and because he wanted to continue his education. M. J. H. confirmed that there are gangs in his community in Guatemala, and he testified that he is afraid to return because he wants to finish his education. M. J. H.'s mother still lives with her parents, M. J. H.'s grandparents, in Guatemala, and M. J. H. and his uncle send money to them. Hernandez-Romero testified that M. J. H. is a good kid who makes good grades in school and that he wants M. J. H. to remain in his care.

Hernandez-Romero further testified he works as a painter and has been able to provide food, clothing, and medical care for M. J. H. M. J. H.'s guardian ad litem ("GAL") testified that she had visited the child and his uncle at their home and had confirmed M. J. H.'s enrollment in high school. M. J. H. had told the GAL that he has a good relationship with his mother. He had also told the GAL that if he went back to Guatemala, he would fear for his life and be scared that he would not be able to complete school because he would need to support his mother financially. The GAL recommended that M. J. H. be allowed to remain in Georgia with Hernandez-Romero as his legal guardian. She believed that this would be in the child's best interest because he did not receive proper education when he lived with his mother, his mother was unable to provide for his basic needs, and he was scared to return to Guatemala due to the gangs and his mother's inability to protect him from those gangs.

The juvenile court found that M. J. H. was a dependent minor child and appointed Hernandez-Romero as the child's custodian. However, the juvenile court also found that reunification with the child's mother was viable and that it was in M. J. H.'s best interest to return to Guatemala. In support of these conclusions, the juvenile court noted that M. J. H. remains in contact with his family in Guatemala and specifically found that, although M. J. H.'s uncle has more financial resources, his family in Guatemala can nonetheless provide proper and adequate care for him. The court further concluded, in its written order: "While the child has expressed concerns regarding the presence of gangs in his community,

it is the unfortunate reality that gangs are present in this county where he now resides."

*In the Interest of M. J. H.*, supra, 366 Ga. App. at 873-874.

In M. J. H.'s first appeal from the trial court's order, we determined that the trial court improperly relied on facts outside of the record when making its ruling, specifically its reference to the presence of gangs in DeKalb County, and so we vacated the trial court's order and remanded for further proceedings. *In the Interest of M. J. H.*, supra, 366 Ga. App. at 874-876. Following another hearing on remand, the trial court again concluded that reunification with the child's mother was viable and that it was in M. J. H.'s best interest to return to Guatemala. This appeal followed.

1. Hernandez-Romero first argues that the trial court deviated from our instruction in the first appeal by again considering facts outside the record and by failing to consider the evidence of gangs and criminal activity in Guatemala in light of our conclusion in the first appeal that "the presence of crime and gangs was a central issue in this case." We conclude that Hernandez-Romero has not shown that the trial court erred on remand.

"When a judgment is reversed and the case is remanded to the trial court with direction, it is the duty of the trial court in good faith to carry into full effect the mandate of the appellate court. The rulings of our appellate courts are binding on the trial court in all subsequent proceedings in the case." (Citations and punctuation omitted.) *Sponsler v. Sponsler*, 353 Ga. App. 627, 632 (3) (838 SE2d 921) (2020).

Although Hernandez-Romero argues that the trial court again considered facts outside of the record when rendering its order, he does not point to any specific facts from outside the record that the trial court allegedly relied upon. Instead, he argues that the trial court's conclusions were based on speculation and improbable interpretations of the facts in the existing record, but these arguments do not show that the trial court improperly relied on facts outside the record. Additionally, Hernandez-Romero argues that the trial court ignored our conclusion that "the presence of crime and gangs was a central issue in this case," *In the Interest of M. J. H.*, supra, 366 Ga. App. at 876, by discounting the evidence he presented of the presence of crime and gangs in Guatemala. However, the trial court's order indicates that it indeed considered this evidence and ultimately found it unpersuasive in light of M. J.

H.'s own testimony. We thus conclude that the trial court did not deviate from our instructions when it entered its order on remand.

2. Hernandez-Romero argues that the trial court erred by failing to consider all of the SIJ factors when making its ruling that reunification with his mother was viable. Specifically, he argues that the trial court failed to consider evidence that M. J. H. was abandoned by his father and neglected by his mother due to the poverty conditions that they lived in while in Guatemala and the fact that he was forced to drop out of school to support his family by working. We conclude that the trial court did not abuse its discretion by concluding that reunification with his mother is viable.

As we have recognized before,

> [f]ederal law provides a path to lawful permanent residency in the United States to resident alien children who qualify for "special immigrant juvenile" (SIJ) status. 8 USC § 1101 (a) (27) (J); 8 CFR § 204.11. Congress created SIJ classification to protect abused, neglected, and abandoned immigrant youth through a process allowing them to become legal permanent residents.

> To be eligible to petition the federal government for SIJ status, the resident alien must be under age 21 and unmarried. 8 CFR § 204.11 (c). The child must have been declared dependent upon a state juvenile court. 8 USC § 1101 (a) (27) (J). And the juvenile court must have made

two additional findings: (1) that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law"; and (2) that "it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence." Id. at (i), (ii). See also 8 CFR § 204.11. Although the juvenile court determines whether the evidence supports the findings, the final decision regarding SIJ status rests with the federal government. 8 USC § 1101 (a) (27) (J) (iii).

(Citation and punctuation omitted.) *In the Interest of M. J. H.*, supra, 366 Ga. App. at 875. Georgia law defines "neglect" in part as "[t]he failure to provide proper parental care or control, subsistence, education as required by law, or other care or control necessary for a child's physical, mental, or emotional health or morals." OCGA § 15-11-2 (48) (A).

First, as for the evidence that M. J. H. was abandoned by his father, the record indicates that M. J. H.'s father passed away in 2021. Accordingly, the trial court did not err by failing to conclude that reunification with M. J. H.'s father is not viable "due to abuse, neglect, abandonment, or a similar basis" because reunification is impossible now due to the father's death.

As for the alleged evidence of neglect by M. J. H.'s mother, the trial court's order indicates that it indeed considered the evidence of the conditions that M. J. H. and his mother were living in while in Guatemala. Specifically, the trial court took into account the fact that M. J. H.'s mother had limited financial means, but it also considered that she was still capable of providing shelter and food for M. J. H. through her residence at M. J. H.'s grandparents' house. The trial court noted that M. J. H. continued to have a relationship with his mother and that Hernandez-Romero continues to send money to her. These findings were supported by M. J. H.'s testimony at the hearing. The trial court was entitled to conclude that the evidence presented of the living conditions that M. J. H. was subjected to while living with his mother did not rise to the necessary level of "neglect" as defined in Georgia law. See *In the Interest of A. M. B.*, 361 Ga. App. 551, 554-557 (a) (864 SE2d 713) (2021) (mother's lack of stable housing and employment did not provide a basis to find that she neglected her children's needs). See generally *In the Interest of C. J. V.*, 323 Ga. App. 283, 287 (746 SE2d 783) (2013) ("[P]overty alone is not a basis for" a finding of neglect so as to terminate parental rights.) (citation omitted).

As for the evidence that, while in Guatemala, M. J. H. dropped out of school at age nine or ten because he needed to earn money for his family, we note that the Georgia Juvenile Code defines neglect in part as "[t]he failure to provide . . . education *as required by law*[,]" (Emphasis supplied.) OCGA § 15-11-2 (48) (A), and the record is devoid of evidence showing what level of education is required by Guatemalan law. Although we are deeply troubled by the fact that M. J. H. dropped out of school at such a young age due to his family's financial situation, we cannot say that this fact alone demanded a finding that M. J. H.'s mother neglected her parental duties absent evidence that she was legally required to provide M. J. H. with education past that point.

Finally, as for the GAL's conclusion that M. J. H.'s mother could not protect him from the violent gangs present in Guatemala, it is true that "a parent's failure to protect a child from harm is sufficient to authorize a finding that the child is [dependent] on account of a lack of proper parental care or control." (Citations omitted.) *In the Interest of L. A. T.*, 291 Ga. App. 312, 315 (661 SE2d 679) (2008). Here, however, while M. J. H. testified that there was "a lot of delinquency and bad things in Guatemala," there was no evidence presented showing that he or his family

had ever been personally targeted or harmed by the gangs and crime in Guatemala and that his mother therefore failed to protect him from that harm, nor was there concrete evidence showing that M. J. H. specifically would be in danger if he returned to Guatemala. Compare id. at 315-316 (evidence that child had been routinely sexually abused by mother's boyfriend and that mother knew about the abuse but did not stop it supported finding that mother was incapable of providing proper care for the child); *In the Interest of A. R.*, 287 Ga. App. 334, 335-336 (651 SE2d 467) (2007) (evidence that child suffered numerous unexplained broken bones while in the parents' custody supported finding that the parents did not provide proper parental care). We further note that there was also no evidence presented that M. J. H. suffered any harm or ill effects at the hands of his mother or anyone else in his family directly. We therefore cannot say that this evidence demanded a finding that M. J. H.'s mother cannot provide a proper level of care.

The trial court was therefore entitled to conclude from the evidence presented that M. J. H.'s mother did not neglect him. See OCGA § 15-11-2 (48) (A). It therefore follows that the trial court did not err by concluding that reunification between M. J. H. and his mother is viable. See 8 USC § 1101 (a) (27) (J); *Hernandez v. Dorantes*, 314

Neb. 905, 923-924 (V) (3) (994 NW2d 46) (2023) (in an application for SIJ status, juvenile court did not abuse its discretion by finding that reunification with a parent was viable when the juvenile court was entitled to conclude that the evidence was insufficient to show parental neglect).

3. In two related enumerations of error, Hernandez-Romero finally argues that the trial court erred by failing to consider evidence of the rampant gangs and crime present in Guatemala as well as the educational consequences of returning M. J. H. to Guatemala when ruling that it was in M. J. H.'s best interest to return to Guatemala. We ultimately discern no abuse of discretion by the trial court.

In making its ruling that it was in M. J. H.'s best interest to return to Guatemala, the trial court noted that M. J. H. continued to maintain a bond with his mother and his family that resided in Guatemala. The fact that M. J. H. continued to have a bond with his mother is supported by the evidence in the record that he continues to have a relationship with her and that he sends money back to Guatemala to help support her. The trial court noted that, while Hernandez-Romero has access to more resources to care for M. J. H., that alone was not sufficient to outweigh the fact that M. J. H. continued to have a bond with his family.

Hernandez-Romero points to the United States Department of State's crime and safety report for Guatemala, which he submitted as an exhibit to his dependency petition, noting among other things that the State Department has described Guatemala as "among the most dangerous countries in the world." The trial court, in its final order, discounted the statements in the country report because it was not presented as evidence during the hearing. Whether or not the trial court was correct by discounting the State Department's country report, however, it is clear from the trial court's order that it did indeed consider the effect of crime and gang violence in Guatemala on M. J. H.'s well-being through its consideration of M. J. H.'s testimony on the matter. The trial court noted that, while M. J. H. testified to the presence of gang activity, when asked at the hearing whether he was scared to return to Guatemala, instead of answering that he was scared because of the crimes or gang activity, he answered that he was scared to return because he "ha[d]n't finished all [his] plans for the future" and continued on to say that he wanted to finish high school and earn enough money "to build a house [for his] mom in Guatemala." And when M. J. H. was asked why he left Guatemala to come to the United States, he again did not refer to crime or gang activity but instead replied that he could not support himself

or his family and had "no future" in Guatemala. By citing to this testimony, the trial court apparently concluded that M. J. H.'s fear of crime and gang activity in his community in Guatemala was either not credible or not substantial enough to outweigh other factors present in the record when determining what was in M. J. H.'s best interest. As noted above, it is not the role of this court to "weigh the evidence nor judge the credibility of the witnesses, but [we must] instead defer to the factual findings made by the juvenile court[.]" (Citations and punctuation omitted.) *In the Interest of H. B.*, supra, 346 Ga. App. at 163.

Although the trial court did not specifically explain why it discounted the evidence of M. J. H.'s lack of educational opportunities in Guatemala, it is the role of the trial court to weigh all of the various facts and circumstances to determine what is in the child's best interest. While we may have reached a different conclusion on the matter, because there is at least some evidence to support the trial court's conclusion, we cannot say that the trial court abused its discretion. See *Hammond v. Hammond*, 282 Ga. 456, 456-457 (1) (651 SE2d 95) (2007) (trial court's determination that it was in the children's best interest to be in the care of their father was affirmed because

14

there was at least some evidence to support it despite the fact that there was evidence in the record pointing in the other direction).

Accordingly, we conclude that the trial court did not abuse its discretion when it found that reunification with M. J. H.'s mother was viable and that it was in M. J. H.'s best interest to return to Guatemala. We therefore affirm its final order of adjudication and disposition.

*Judgment affirmed. Mercier, C. J., and Hodges, J., concur.*